[No. 58944-5.   En Banc.   February 4, 1993.]

THE STATE OF WASHINGTON, *Respondent*, v. PATRICK
J. SCHAFFER, *Petitioner*.

*Andrew P. Zinner* of *Washington Appellate Defender Association,* for petitioner.

*Norm Maleng, Prosecuting Attorney, Theresa Fricke, Senior Prosecuting Attorney,* and *Ellen O'Neill-Stephens, Deputy,* for respondent.

DURHAM, J. — Prior to resting its case in Patrick Schaffer's juvenile hearing for malicious mischief, the State moved to amend the information to bring it into conformity with the evidence. The trial court granted the motion and found that Schaffer had committed the offense. The Court of Appeals affirmed in *State v. Schaffer,* 63 Wn. App. 761, 822 P.2d 292 (1991). We agree.

On July 7, 1989, Schaffer was charged with one count of third degree malicious mischief, RCW 9A.48.090. The information alleged:

> That the respondent Patrick J. Schaffer . . . on or about 4 December 1988, did knowingly and maliciously cause physical damage in excess of $50, to tires, the property of Jeff Syverson and Janice Krogstadt and Lisa Galster . . .[.]

Clerk's Papers, at 1. A fact-finding hearing was held on March 7-8, 1990. Initially, the State produced three witnesses. A fourth witness, Heidi Hughes, was available on a material witness warrant. Janice Krogstadt testified that a "loud and boisterous" group of kids were walking up and down the street on the night of December 4, 1988. She witnessed one boy knocking her mailbox from its stand, while another boy stood nearby. The next day she discovered that a tire on her husband's pickup truck had been slashed. She was unable to identify any of the group members. Her testimony was bolstered by Richard Mathews, a neighbor who lived across the street from the Krogstadts.

He testified that he saw Pat Schaffer, Tony DeArment and Heidi Hughes walking down the street with some other kids on the night in question. Further, he testified that Pat and Tony were knocking mailboxes off their stands with a baseball bat. The next morning he observed that a number of mailboxes, including the one belonging to the Krogstadts, had been knocked from their stands. The court also heard testimony from Jeffery Syverson, who lives near the Krogstadts. He testified that on December 4, 1988, someone stole several items from his vehicle and punctured the tires.

Following Syverson's testimony, the State moved to amend the information to allege damage to both tires and mailboxes. It also deleted any reference to the value of the property, thereby reducing the charge from a gross misdemeanor to a misdemeanor. *See* RCW 9A.48.090(2). The trial court denied this motion because the testimony up to that point had failed to demonstrate a sufficient relationship between the tire and mailbox incidents. Without some relationship, it would prejudice Schaffer's case to allow an amendment alleging a separate incident. Nonetheless, the trial court informed the prosecution that it could renew its motion if it could establish a connection between the events.

To establish this nexus, the State called Heidi Hughes under a grant of transaction immunity. Hughes testified that the acts of vandalism occurred while she, Schaffer and several friends were walking to, and home from, a bowling alley. During this walk, Schaffer and two other boys "were slashing tires and knocking down mailboxes." Report of Proceedings, at 49. Based upon this testimony, the trial court granted the State's renewed motion to amend the information. The court found that any motion in limine to exclude testimony regarding the mailboxes would have been denied, and that Schaffer suffered no prejudice with regard to cross examination strategy prior to the amendment. The State rested following Schaffer's cross examination of Hughes. The defense called no witnesses.

The court found Schaffer guilty of third degree malicious mischief as charged in the amended information. Specifi-

cally, the court found that Schaffer damaged a mailbox belonging to Janice Krogstadt. This vandalism occurred while "the respondent was participating with a group of juveniles in a continuous course of vandalism that included the slashing of tires and knocking off mailboxes from their stands." Clerk's Papers, at 19. The acts of vandalism involving tires and mailboxes did not occur separately, but were part and parcel to each other.

Schaffer appealed, challenging the propriety of the midtrial amendment of the information. In a unanimous decision, the Court of Appeals affirmed the conviction, holding that the amendment comported with constitutional notice requirements. It also found that the amendment was appropriate under CrR 2.1(e) because it did not substantially prejudice Schaffer's case. According to the appellate court, evidence regarding the mailboxes would have been admissible under a res gestae (same transaction) analysis. We accepted review.

In this proceeding, the sole issue before us is the constitutional validity of an amendment to a charging document during the State's case.[1] Schaffer claims that our decision in *State v. Pelkey*, 109 Wn.2d 484, 487, 745 P.2d 854 (1987) does not allow midtrial amendments which add an additional method of committing an offense. We disagree.

A criminal defendant is to be provided with notice of all charged crimes. Under article 1, section 22 of the Washington Constitution, "the accused shall have the right . . . to demand the nature and cause of the accusation against him". As this court has often noted, "[i]t is fundamental that

---

[1]In supplemental briefing before this court, Schaffer raised the additional issue of whether the amendment was proper under CrR 2.1(e), claiming that he was substantially prejudiced. We do not consider this issue, however, because it was not properly raised in the petition for review. *Douglas v. Freeman*, 117 Wn.2d 242, 257-58, 814 P.2d 1160 (1991). Under RAP 13.7(b), this court "will review only the questions raised in the . . . petition for review . . . unless the Supreme Court orders otherwise upon the granting of the . . . petition." Review, here, was granted only on the constitutional issue. As such, the determination by both the trial court and the Court of Appeals that the amendment did not operate to the substantial prejudice of Schaffer's rights stands as a verity.

under our state constitution an accused person must be informed of the criminal charge he or she is to meet at trial, and cannot be tried for an offense not charged." *State v. Irizarry*, 111 Wn.2d 591, 592, 763 P.2d 432 (1988); *accord State v. Markle*, 118 Wn.2d 424, 432, 823 P.2d 1101 (1992); *Pelkey*, 109 Wn.2d at 487.

■ In enforcing the state constitution's notice provision, this court has avoided technical rules. Instead, we have tailored our jurisprudence toward the precise evil that article 1, section 22 was designed to prevent — charging documents which prejudice the defendant's ability to mount an adequate defense by failing to provide sufficient notice. *State v. Leach*, 113 Wn.2d 679, 695-96, 782 P.2d 552 (1989). For example, in *Pelkey*, this court adopted a per se rule limiting the ability to amend an information once the State has rested its case "unless the amendment is to a lesser degree of the same charge or a lesser included offense." 109 Wn.2d at 491. Any greater amendment "necessarily prejudices" the defendant's rights under the state constitution. *Pelkey*, at 491; *accord Markle*, 118 Wn.2d at 436-37. Other cases from this court have also emphasized the relationship between article 1, section 22 and prejudice. *See, e.g.*, *State v. Kjorsvik*, 117 Wn.2d 93, 105-07, 812 P.2d 86 (1991) (When an information is challenged for the first time on appeal, the conviction will not be overturned if a fair reading of the charging document reveals the necessary elements and the defendant fails to demonstrate that he or she was "actually prejudiced".); *Leach*, at 696 ("Technical defects not affecting the substance of the charged offense do not prejudice the defendant and thus do not require dismissal."); *State v. James*, 108 Wn.2d 483, 490, 739 P.2d 699 (1987) (under facts of case, amendment caused no "specific prejudice"); *State v. Purdom*, 106 Wn.2d 745, 748, 725 P.2d 622 (1986) (as a matter of law, substantial rights prejudiced when court denies defendant's request for a continuance following an amendment on day of trial).

Schaffer's attempt to read into *Pelkey* a per se rule prohibiting amendments during the State's case is misplaced. *Pelkey*

did not paint with so broad a brush. Instead, it addressed only the constitutionality of an amendment adopted *after* the State has rested its case.

In *Pelkey*, the State moved to amend the information following the close of its case. This amendment came in response to a defense motion to dismiss due to the State's failure to sufficiently prove the originally charged crime. Whereas the original information charged Pelkey with bribery, the amended information charged trading in special influence — a completely different crime. This court held that:

> A criminal charge may not be amended after the State has rested its case in chief unless the amendment is to a lesser degree of the same charge or a lesser included offense. Anything else is a violation of the defendant's article 1, section 22 right to demand the nature and cause of the accusation against him or her.

*State v. Pelkey*, 109 Wn.2d 484, 491, 745 P.2d 854 (1987). Such amendments are not permitted following the close of the State's case because the likelihood of prejudice is too great. *Pelkey*, at 491.

As for amendments during the State's case, however, *Pelkey* cited the court rule allowing such amendments, CrR 2.1(e), with approval. *Pelkey*, at 490-91. Consistent with our cases interpreting article 1, section 22 of our constitution, CrR 2.1(e) allows amendments which do not prejudice a defendant's "substantial rights". Because CrR 2.1(e) "necessarily operates within the confines of article 1, section 22", *Pelkey*, at 490; *Markle*, at 437, the possibility of amendment will vary in each case. For example, when a jury is involved and the amendment occurs late in the State's case, impermissible prejudice could be more likely. *Pelkey*, at 490. On the other hand, impermissible prejudice is less likely:

> where the amendment merely specif[ies] a different manner of committing the crime originally charged[,] *State v. Gosser*, 33 Wn. App. 428, 656 P.2d 514 (1982), or charge[s] a lower degree of the original crime charged, *State v. Brown*, 74 Wn.2d 799, 447 P.2d 82 (1968).

*Pelkey*, at 490-91. It is for the trial court to judge each case on its facts, and reversal is required only upon a showing of

abuse of discretion. *State v. James*, 108 Wn.2d 483, 490, 739 P.2d 699 (1987); *State v. Wilson*, 56 Wn. App. 63, 65, 782 P.2d 224 (1989), *review denied*, 114 Wn.2d 1010 (1990).

Several cases from the Court of Appeals support our analysis. In *Wilson*, the trial court granted the State's motion to amend the information to include a third count of indecent liberties on the day of the trial. The Court of Appeals upheld Wilson's conviction finding "no specific evidence . . . to support a claim of prejudice". *Wilson*, at 65. Like the current case, the amended information in *Wilson* alleged an additional act related in scope to the previous counts. Less prejudice exists here than in *Wilson*, though, because the amendment in Schaffer's case did not add any additional counts.

Similarly, a midtrial amendment was allowed in *State v. Mahmood*, 45 Wn. App. 200, 724 P.2d 1021, *review denied*, 107 Wn.2d 1002 (1986), which added a new theory of criminal liability. When making the amendment, the State indicated that a later witness would offer testimony supporting the new theory. The Court of Appeals upheld this amendment because there was no showing that Mahmood was "misled or surprised". *Mahmood*, at 205. Again, the case is factually similar to the current one. Schaffer, like the defendant in *Mahmood*, was aware that the State might pursue the additional theory prior to the actual amendment. Moreover, the new theory presented in the amended information arose out of the same general factual circumstance. Also, like *Mahmood*, Schaffer had the opportunity to cross-examine the key witness — Heidi Hughes — with full knowledge of the proposed amendment.

In short, Schaffer provides no compelling reasons for interpreting article 1, section 22 of our constitution as a blanket prohibition against midtrial amendments. There is no need to redraw the line established in *Pelkey* to a point earlier in the criminal process. Our longstanding court rule, CrR 2.1(e), amply delineates the constitutional boundaries applicable to amendments during the State's case. *See also State v. Brown*, 55 Wn. App. 738, 780 P.2d 880 (1989), *review denied*, 114

Wn.2d 1014 (1990) (Amendment on first day of trial did not create prejudice because "reduced charge involved the same evidence and presented no problems for the preparation of Brown's defense."); *State v. Gosser*, 33 Wn. App. 428, 435, 656 P.2d 514 (1982) ("Where the principal element in the new charge is inherent in the previous charge and no other prejudice is demonstrated, it is not an abuse of discretion to allow amendment on the day of trial."). If a defendant is prejudiced by an amendment, then he or she should be able to demonstrate this fact.

The amendment was proper under article 1, section 22 of our constitution and Schaffer's juvenile conviction for malicious mischief is affirmed.

BRACHTENBACH, DOLLIVER, ANDERSEN, SMITH, and GUY, JJ., concur.

JOHNSON, J. (dissenting) — I dissent. This case involves the interplay between article 1, section 22 of the Washington Constitution and CrR 2.1(e). This issue has been addressed and resolved in *State v. Pelkey*, 109 Wn.2d 484, 745 P.2d 854 (1987), which this court recently refused to overrule in *State v. Markle*, 118 Wn.2d 424, 436, 823 P.2d 1101 (1992). In this case, however, the majority misconstrues the issue and fails to follow *Pelkey* and *Markle*. In *Pelkey*, this court held a midtrial amendment to an information charging a different crime violates article 1, section 22. *Pelkey*, at 487. Article 1, section 22 gives the accused the right to demand the nature and cause of the accusation before the trial starts. The *Pelkey* and *Markle* rule is correct because it recognizes the defendant's entire defense is necessarily based on the charge alleged in the original information at the start of trial. An amendment midway through trial, after opening statements and witness testimony, prejudices the defendant's ability to fairly defend himself or herself, placing the defendant at a severe disadvantage. The majority contends the burden is on the defendant to show prejudice. However, *Pelkey* explicitly rejected this contention, and just 9 months ago, in *Markle*,

we reaffirmed *Pelkey*. Justice Guy, writing for a unanimous court, indicated that under *Pelkey* a midtrial amendment of information is "reversible error per se *even without a defense showing of prejudice*". (Italics mine.) *Markle,* at 437. Yet today, the majority ignores *Markle* and attempts to overrule *Pelkey*. Moreover, the cases cited by the majority in reaching its conclusion do not support its analysis. Rather, this court has consistently held a new crime is charged when the identity of the subject property is changed. Because the midtrial amendment in this case changed the subject property, the amendment alleged a new crime in violation of the defendant's rights under article 1, section 22.

Article 1, section 22 guarantees criminal defendants "shall have the right . . . to demand the nature and cause of the accusation" against them. Const. art. 1, § 22 (amend. 10). "Under this criminal provision, an accused person must be informed of the charge he or she is to meet at trial, and cannot be tried for an offense not charged". *Pelkey,* at 487 (citing *State v. Carr,* 97 Wn.2d 436, 439, 645 P.2d 1098 (1982); *State v. Rhinehart,* 92 Wn.2d 923, 602 P.2d 1188 (1979)).

In this case, the defendant was charged with third degree malicious mischief by slashing tires. Midway through trial, after three of the State's four witnesses had testified and been excused, the State moved to amend the information to include an allegation of third degree malicious mischief by knocking down mailboxes. The court initially denied the motion. After the direct testimony by the fourth and final witness, the court allowed the State's motion to amend the information to add the mailbox allegation to the tire slashing charge. *Pelkey* squarely holds such midtrial amendments are unconstitutional. *Pelkey,* at 491, 487 (citing *State v. Olds,* 39 Wn.2d 258, 235 P.2d 165 (1951)). Nevertheless, the majority refuses to find *Pelkey* controlling.

The first flaw in the majority's analysis is that it misconstrues *Pelkey*. The majority mischaracterizes *Pelkey* as addressing only the constitutionality of amendments made after the State rests its case. Majority, at 620-21. In *Pelkey,*

the State moved to amend midtrial, after presenting its case in chief. *Pelkey,* at 486. However, the majority mischaracterizes *Pelkey* as turning *only* on the fact that the amendment came after the State rested, instead of some point earlier in trial. The distinction actually drawn in *Pelkey* was between the constitutionality of amendments *before* trial *starts* versus amendments *after* trial has already begun. The court stated:

> *During the investigatory period* between the arrest of a criminal defendant and the trial, the State frequently discovers new data that makes it necessary to alter some aspect of the information. It is at this time amendments to the original information are liberally allowed, and the defendant may, if necessary, seek a continuance in order to adequately prepare to meet the charge as altered.
>
> The constitutionality of amending an information *after trial has already begun* presents *a different question.* All of the pretrial motions, voir dire of the jury, opening argument, questioning and cross examination of witnesses are based on the precise nature of the charge alleged in the information. Where a jury has already been empaneled, the defendant is highly vulnerable to the possibility that jurors will be confused or prejudiced by a variance from the original information.

(Citation omitted. Italics mine.) *Pelkey,* at 490. Thus, under *Pelkey* the question of allowing amendments turns on whether the amendment is requested before or after trial has started, rather than, as the majority suggests, on whether the State has rested its case.

The majority also incorrectly attempts to distinguish the facts of *Pelkey* from this case. Even if the crux of *Pelkey* is the timing of the amendment at the close of the State's case, the timing difference between this case and *Pelkey* is slight. In this case, the State moved to amend after direct examination of its final witness, but before the defendant's cross examination of this witness. In *Pelkey,* the State moved after cross examination of its final witness. Thus, the only difference between the cases is the cross examination of the final witness.

It is absurd to make this difference the basis for distinguishing *Pelkey* from this case. Under the majority's reasoning, an amendment is acceptable if made after direct exami-

nation of the State's final witness but *before* cross examination of this witness. However, the same amendment made *after* cross examination would be unconstitutional. Making the constitutionality of an amendment turn on one cross examination is arbitrary, and misses the point of *Pelkey* and the purpose underlying article 1, section 22.

The purpose of article 1, section 22 is to provide defendants with sufficient notice of the charge against them so they will not be prejudiced in preparing their defense. *See Pelkey,* at 490-91. The majority even acknowledges that this is the "precise evil that article 1, section 22 was designed to prevent". Majority, at 620. Yet the majority ignores the clear prejudice in this case resulting from the midtrial amendment. Moreover, this prejudice is virtually the same in this case as in *Pelkey.*

In *Pelkey,* the court noted a defendant's entire defense is based on the charge alleged in the original information at the start of trial. *Pelkey,* at 490. All motions, voir dire, opening statements, questioning, and cross examination are necessarily based on this charge. An amendment midway through trial, after opening statements and witness testimony, damages a defendant's ability to fairly defend himself or herself because the charge has changed. Thus, the amendment prejudices the defendant, placing him or her at a severe disadvantage.

In this case, the trial court first denied the State's motion to amend on these very grounds. The court noted defense counsel had developed one theory of the case based on defending against the tire slashing charge, a charge on which the defendant ultimately prevailed. Fact-finding hearing, at 41, 43. Changing the charge to include knocking down mailboxes would force the defendant to change his defense theory midtrial. Thus, the court correctly concluded at that time the defendant would be prejudiced by a midtrial amendment *because the defendant and his counsel had already made strategic decisions based on the original information.* Fact-finding hearing, at 36.

Not only was the defendant forced to change strategies midstream, but he also lost opportunities to defend himself

against the new allegation. In particular, the defendant was denied the opportunity to effectively cross-examine three of the four State's witnesses on the new mailbox allegation. The three witnesses testified, were cross-examined, and were excused by the court on the first day of trial. The defendant cross-examined those witnesses based only on the charge of tire slashing. The State did not move to amend the information to add the mailbox charge until the second day of the 2-day trial, before its final witness. Thus, the opportunity for the defendant to effectively cross-examine the previous witnesses on this new, different allegation was lost.

Despite this apparent prejudice, the majority concludes the defendant has failed to show prejudice,[2] and his constitutional challenge must fail. Majority, at 622-23. Under the majority's analysis, a defendant must show actual prejudice to sustain a constitutional challenge under article 1, section 22.

The majority derives this prejudice requirement from CrR 2.1(e). According to the majority, CrR 2.1(e) "amply delineates the constitutional boundaries applicable to amendments during the State's case". Majority, at 622. Because CrR 2.1(e) requires the defendant to prove actual prejudice, the majority reads into article 1, section 22 a requirement of showing prejudice. Yet, our constitution contains no such requirement. When an amendment adds a new crime, a defendant "need not show prejudice" under an article 1, section 22 challenge. *State v. Mahmood*, 45 Wn. App. 200, 724 P.2d 1021, *review denied*, 107 Wn.2d 1002 (1986). Furthermore, in *Pelkey*, this court explicitly rejected this analysis adopted by the majority:

> The State contends that, under [CrR 2.1(e)], the defendant bears the burden of showing that she has suffered prejudice from the midtrial amendment, that she has failed to do so,

---

[2]The basis for the majority's conclusion is that the activities were connected as one continuous course of conduct. However, even if it were one continuous course of conduct, a charge of damaging mailboxes *and* tires is *factually different* from a charge of damaging only tires. The defendant still lost the opportunity to cross-examine on the combined charge and was forced to change his strategy midtrial. Thus, the defendant was still prejudiced by the amendment.

and therefore, her challenge must fail. We cannot sustain an interpretation of a court rule which contravenes the state constitution.

> *CrR 2.1(e) necessarily operates within the confines of article 1, section 22.*

(Italics mine.) *State v. Pelkey,* 109 Wn.2d 484, 490, 745 P.2d 854 (1987). Amending the information midtrial "*necessarily prejudices* this substantial constitutional right, within the meaning of CrR 2.1(e)". (Italics mine.) *Pelkey,* at 491.

Nevertheless, the majority declares that a constitutional challenge must fail unless the defendant can show actual prejudice from a midtrial amendment. This court rejected that argument in 1987 in *Pelkey.* Just recently, we rejected the State's request to overrule *Pelkey* in *State v. Markle,* 118 Wn.2d 424, 436, 823 P.2d 1101 (1992). As stated by Justice Guy, writing for a unanimous court: under *Pelkey,* midtrial amendment of an information is "reversible error per se even without a defense showing of prejudice". *Markle,* at 437. Yet today, the majority ignores *Markle* and attempts to overrule *Pelkey.*[3]

The cases cited by the majority in reaching its conclusion do not support its analysis. The majority first cites *State v. Wilson,* 56 Wn. App. 63, 782 P.2d 224 (1989), *review denied,* 114 Wn.2d 1010 (1990). In *Wilson,* the State moved to amend the information at the start of trial, before any witnesses were examined. *Wilson,* at 64-65. Unlike this case, the defendant in *Wilson* did not lose the opportunity to cross-examine witnesses on the amended charge. Furthermore, the additional count in *Wilson* was for the same charge of indecent liberties involving the same 5-year-old child. *Wilson,* at 64. Conversely, in this case the amended charge involved a factually different incident relating to completely different property.

---

[3]Of course, the extent to which the majority's decision overrules *Pelkey* remains to be seen. This case involves only a juvenile fact-finding hearing before a judge, rather than a jury trial of an adult. As noted in *Pelkey,* "[w]here a jury has already been empaneled, the defendant is highly vulnerable to the possibility that jurors will be confused or prejudiced by a variance from the original information". *Pelkey,* at 490.

Other cases cited by the majority are also distinguishable and do not support its analysis. *See State v. Brown*, 55 Wn. App. 738, 780 P.2d 880 (1989), *review denied,* 114 Wn.2d 1014 (1990); *State v. Gosser,* 33 Wn. App. 428, 656 P.2d 514 (1982); *State v. Mahmood,* 45 Wn. App. 200, 724 P.2d 1021, *review denied,* 107 Wn.2d 1002 (1986). Like *Wilson,* both *Brown* and *Gosser* involved amendments on the first day of trial when the defense still had the opportunity to cross-examine witnesses based on the amended information. *Brown,* at 743; *Gosser,* at 434-35. In *Mahmood,* evidence about the amended charge had not yet been introduced; thus, the defendant still had the opportunity to cross-examine and present a defense. *Mahmood,* at 204-05. In contrast, the amendment in this case came after three of the State's four witnesses had testified and been dismissed. Thus, the defendant's opportunity to effectively cross-examine was largely lost.[4]

The final flaw in the majority's analysis is that it mischaracterizes the nature of the midtrial amendment. According to the majority, the amendment only states "an additional method of committing an offense". Majority, at 619. In other words, the action of knocking down mailboxes is simply a different *method* of committing the crime of malicious mischief in the third degree.

The Court of Appeals has allowed an amendment that merely specifies a different means of committing the crime originally charged. *Gosser,* at 434-35 (assault with intent to commit a felony amended to assault with a weapon because they were both means of committing second degree assault). *Gosser,* however, is distinguishable. The amendment in *Gosser* did not change the victim's identity or the charge of assault. Only the *means* by which the assault was accomplished was changed. Here, by contrast, the State changed the property

---

[4]All three of these cases are also distinguishable because they involved challenges to amending an information under CrR 2.1(e), not article 1, section 22. As the majority notes, review in this case was granted only on the constitutional issue, *not* on the issue of whether the amendment was proper under CrR 2.1(e). Majority, at 619 n.1. Thus, these three cases analyzing whether amendments were proper under CrR 2.1(e) are not controlling in determining whether the amendment in this case was proper under article 1, section 22.

that was the subject of the alleged crime: the original charge was knowingly and maliciously damaging tires, whereas the crime for which the defendant was convicted was knowingly and maliciously damaging a mailbox. Knocking down mailboxes and slashing tires involve factually different incidents. In this case, the amendment to the information does not simply add a different means of committing malicious mischief. Rather, the allegation is of a completely separate and distinct act.

Washington courts have consistently held a new crime is charged when the prosecution changes the identity of the subject property or the property's owner. *See, e.g., State v. Stephens,* 93 Wn.2d 186, 607 P.2d 304 (1980) (reversing conviction when information charged defendant with assaulting *both* victims but jury was instructed that guilt could be based on assault of *either* of two victims); *State v. Phillips,* 27 Wash. 364, 67 P. 608 (1902) (reversing conviction for stealing Canadian currency when charged with stealing United States currency); *State v. Van Cleve,* 5 Wash. 642, 32 P. 461 (1893) (denying amendment changing name of larceny victim from Wm. Burbank to Walter Burbank).

In this case, the prosecution amended the information to include malicious mischief to mailboxes, which was an entirely new crime from slashing tires. "Article 1, section 22 of the state constitution prohibits an amendment to an existing count where the amendment is essentially a different crime". *Mahmood,* at 205-06 (citing *State v. Olds,* 39 Wn.2d 258, 235 P.2d 165 (1951)). Because the amendment in this case involved a factually different crime, the defendant's article 1, section 22 right was violated.

The ultimate problem in this case is one of fairness. The State had ample opportunity for over a year to interview its witnesses and amend the information to include a new charge based on a completely different factual scenario. Instead, the State moved to amend only after realizing it could not prove malicious mischief by slashing tires, but might prove knocking down mailboxes. However, " 'accusation must precede conviction". *Pelkey,* at 488 (quoting *State v.*

*Ackles,* 8 Wash. 462, 464-65, 36 P. 597 (1894)). Preventing this type of fundamental unfairness is exactly why article 1, section 22 gives an accused the right to demand the nature and cause of the accusation *before* trial starts.

In conclusion, the prejudice from the midtrial amendment is the same in this case as in *Pelkey.* Regardless of whether the amendment came before or after cross examination of the final witness, the defendant's ability to defend himself against the new allegation was severely impaired. The defendant's investigation, cross examination, and decision about going to trial were all based on the original information. Like *Pelkey,* once that information was changed, the defendant was forced to shift his defense theory midway through trial to defend himself against an entirely new allegation. He also lost the opportunity to effectively cross-examine earlier witnesses on the amended charge. Thus, *Pelkey* controls the outcome of this case. No sound justification exists for not requiring the State to investigate its cases before trial and to charge the crime it intends to prove at trial. Article 1, section 22 at a minimum requires this. I would reverse the conviction.

DORE, C.J., and UTTER, J., concur with JOHNSON, J.

Reconsideration denied March 17, 1993.