184 P.3d 1273 (2008)
STATE of Washington, Respondent,
v.
Adam Jeffery HOCKADAY, Appellant.
No. 35976-6-II.
Court of Appeals of Washington, Division 2.
June 3, 2008.
*1274 Valerie Marushige, Attorney at Law, Kent, WA, for Appellant.
Susan Irene Baur, Cowlitz Co. Prosecutor's Office, Kelso, WA, for Respondent.
HUNT, J.
¶ 1 Adam Jeffery Hockaday appeals his conviction for resisting arrest. He argues that under State v. Pelkey, 109 Wash.2d 484, 745 P.2d 854 (1987), the trial court erred when it allowed the State to amend the resisting arrest charge after the State had rested its case in chief. Because Hockaday was aware of and agreed to the proposed amendment before the State rested its case and moved to amend the information, we conclude that Pelkey does not apply. Because Hockaday does not otherwise allege or show that the trial court erred in granting the State's motion to amend, we affirm.

FACTS

I. Resisting Arrest
¶ 2 On October 22, 2006, Longview Police Officers Jason Ferris, Alan Buchholz, Jeremy Johnson, and Ken Hardy, went to a residence at 2914 Louisiana, in Longview, Washington. They were seeking three individuals, Jason Austin, Randi Beck, and Tony Cavossos, whom the officers suspected were involved in an earlier assault and malicious mischief incident. When Ferris knocked on the door, Austin and Hockaday came outside.
¶ 3 While Ferris was arresting Austin, Hockaday, who appeared to be intoxicated, started asking Ferris questions about what was going on. Ferris told Hockaday why the officers were there and for whom they were looking. When Ferris asked Hockaday if anyone else they were looking for was inside residence, Hockaday responded that no one else was in the residence. Having heard several voices inside the residence when he first approached the residence, Ferris confronted Hockaday about this response and asked Hockaday to go inside and send the others out. Throughout the conversation, Hockaday became increasingly aggressive and agitated. At one point, Ferris warned Hockaday that he was obstructing the officers' investigation and was risking arrest. Hockaday then went back inside the residence.
¶ 4 After Ferris placed Austin in a patrol car, the officers returned to the residence to see if they could locate any of the other individuals. While the officers waited a few minutes to see if anyone else would come out, Ferris continued to hear people talking inside the residence, but no one else came out. Ferris then repeatedly knocked on the door and announced he was with the police. When no one responded, the officers contacted a woman who lived at the residence and obtained her permission to enter through her bedroom window. Not wanting to risk entering the residence that way, Ferris continued to knock.
¶ 5 Hockaday eventually answered the door; attempted to step out and shut the door behind him; and shoved Ferris, who put his hand up to keep the door from shutting, in the chest hard enough to knock him off balance. Ferris then told Hockaday he was under arrest and attempted to grab his right arm. With his left arm, Hockaday hit Ferris in the side of the head.
¶ 6 The other officers then attempted to grab Hockaday and pushed him back inside the house through the front door, eventually landing on a nearby hide-a-bed where another man, David Andrews, was lying. During the ensuing struggle, Officer Johnson told *1275 Hockaday he was under arrest and ordered him to stop resisting. Hockaday continued to thrash about on the hide-a-bed as the officers attempted to subdue him.
¶ 7 At some point during this struggle, Ferris turned his attention to a woman who had entered the room screaming. Ferris observed Hockaday attempt to throw a few more punches and saw Johnson punch Hockaday. Eventually, the officers gained control of Hockaday, took him outside, forced him to the ground, and handcuffed him; Hockaday continued to resist until he was fully restrained.

II. Procedure

A. Charges
¶ 8 On October 25, 2006, the State charged Hockaday with the third degree assault of Ferris (count I) and resisting arrest (count II). The information charged resisting arrest as follows:
The defendant, in the County of Cowlitz, State of Washington, on or about October 22, 2006, did intentionally attempt to prevent, Officer Ferriss (sic), a police officer, from lawfully arresting him; contrary to RCW 9A.76.040(1) and against the peace and dignity of the State of Washington.
Clerk's Papers (CP) at 1-2 (emphasis added). On October 26, the trial court arraigned Hockaday, and he pleaded not guilty to both charges.
¶ 9 At the December 14, 2006 omnibus hearing, Hockaday moved for a bill of particulars on the third degree assault charge.[1] He did not request clarification of the resisting arrest charge.

B. Trial and Oral Motion to Amend Information
¶ 10 On the first day of trial, February 9, 2007, defense counsel informed the trial court that (1) she had discussed the bill of particulars with the prosecutor, (2) she was satisfied with the prosecutor's oral response, and (3) she was not currently demanding a written bill of particulars. Officers Ferris, Buchholz, and Johnson then testified for the State.
¶ 11 Immediately after the State rested, the prosecutor told the trial court that she wanted to move to amend the information on the resisting arrest charge to "eliminate the reference to Officer Ferris." Report of Proceedings (RP) at 92. She further informed the trial court that (1) the parties had previously discussed this amendment, (2) defense counsel had "indicated that [the amendment] would not be a problem," and (3) she (the prosecutor) realized that she should have raised this issue before she rested the State's case.[2] RP at 92. Defense counsel confirmed that she had previously told the prosecutor that the amendment was not a problem. The trial court allowed the amendment.[3]
¶ 12 The parties then turned to the jury instructions. While discussing the instructions, defense counsel reiterated that the prosecutor had orally responded to Hockaday's prior motion for a bill of particulars on the assault charge.[4]
¶ 13 When the trial resumed, Hockaday presented his only witness, David Andrews. Andrews testified that he (1) saw Hockaday answer the door when the police knocked and announced themselves, (2) heard Hockaday tell the officers they could not come inside when they tried to do so, (3) saw the officers grab Hockaday and force him onto the hide-a-bed, *1276 (4) heard one of the officers tell Hockaday that he (Hockaday) was resisting arrest, and (5) saw one of the officers punch Hockaday two or three times before the officers took Hockaday away. Andrews also testified that Hockaday was trying to protect his face when the officers were "swinging at him [Hockaday]," and that he (Andrews) had not seen anything that happened before the officers pushed Hockaday into the residence.
¶ 14 During closing, the State argued that the evidence established that Hockaday had prevented or attempted to prevent a "peace officer" from arresting him, asserting that all three of the officers who testified stated that Hockaday resisted their attempt to arrest him. Defense counsel argued that Hockaday, who was not aware someone had given the officers permission to enter the residence, (1) was merely uncooperative, (2) had inadvertently touched Ferris, and (3) had merely been in the way when the officers grabbed him and pushed their way into the house. The jury found Hockaday guilty of both charges.
¶ 15 Hockaday appeals only his resisting arrest conviction.

ANALYSIS
¶ 16 Hockaday argues that under Pelkey, (1) the trial court erred when it allowed the State to amend the resisting arrest charge after the State presented its case in chief; and (2) because this error was not invited, reversal is required. We agree that the invited error doctrine does not apply here;[5] but we disagree that Pelkey applies because Hockaday was aware of and agreed to the amendment of the information well before the State rested its case.[6] Thus, Hockaday's argument fails.

I. Standard of Review
¶ 17 We review a trial court's decision to allow the State to amend a charge for abuse of discretion. State v. Haner, 95 Wash.2d 858, 864, 631 P.2d 381 (1981). It is fundamental that an accused must be informed of the charge he is to meet at trial and that he cannot be tried for an offense not charged. State v. Carr, 97 Wash.2d 436, 439, 645 P.2d 1098 (1982); State v. Lutman, 26 Wash.App. 766, 767, 614 P.2d 224 (1980).

II. Application of Pelkey Rule
¶ 18 Generally, a trial court may allow amendment of the information at any time before the verdict as long as the "substantial rights of the defendant are not prejudiced." CrR 2.1(d).[7] Although the court rules permit liberal amendment, this approach is tempered by article I, section 22 of the Washington Constitution, which requires that the accused be adequately informed of the charge against which he must defend at trial. Pelkey, 109 Wash.2d at 487-90, 745 P.2d 854.
¶ 19 In Pelkey, our Supreme Court announced one of the constitutional limitations to CrR 2.1(d). Under Pelkey, the State cannot amend a charge after it has rested its case in chief unless the amended charge is a lesser included offense or a lesser degree of the same offense. Pelkey, 109 Wash.2d at 491, 745 P.2d 854; see also State v. Vangerpen *1277 125 Wash.2d 782, 789-91, 888 P.2d 1177 (1995) (citing Pelkey, 109 Wash.2d at 491, 745 P.2d 854); State v. Markle, 118 Wash.2d 424, 436-37, 823 P.2d 1101 (1992) (citing Pelkey, 109 Wash.2d at 491, 745 P.2d 854). The Pelkey court held that because such late amendment "`necessarily prejudices'" a defendant's constitutional right to demand the nature and cause of the accusation against him, a trial court commits per se reversible error if it allows the State to amend the information after the State has rested its case. Markle, 118 Wash.2d at 437, 823 P.2d 1101 (quoting Pelkey, 109 Wash.2d at 491, 745 P.2d 854) (emphasis omitted).
¶ 20 But Pelkey and its progeny all address situations where the defendant first learned about the State's motion to amend after the State rested its case.[8] Not one of these cases address the circumstances we have here, where the State and defense agreed to the amendment before the State rested its case in chief, and the prosecutor merely failed to put the appropriate motion on the record before resting. We find this distinction dispositive.
¶ 21 In Schaffer, our Supreme Court strictly limited Pelkey to situations where the State brings the motion to amend the information after resting its case, emphasizing the risk of prejudice. State v. Schaffer, 120 Wash.2d 616, 620-21, 845 P.2d 281 (1993) (citing Pelkey, 109 Wash.2d at 491, 745 P.2d 854). But the Court also clarified that this same risk of prejudice did not exist and prejudice should not be presumed if the State moved to amend the information during its case in chief, even if the State called no more witnesses following the amendment. Schaffer, 120 Wash.2d at 620-22, 845 P.2d 281. Instead, the Court held that if the State moved to amend before resting its case, the amendment was proper if it complied with CrR 2.1(d), which provides:
The court may permit any information or bill of particulars to be amended at any time before verdict or finding if substantial rights of the defendant are not prejudiced.
¶ 22 Here, although here the State failed formally to move to amend the information before resting its case, Hockaday does not dispute that he was aware this intent and that in fact, he had agreed to the amendment. Hockaday's prior knowledge of and agreement to the amendment eliminated the risk of prejudice against which the Pelkey rule was intended to protect. Thus, the facts here are more factually similar to Schaffer. As in Schaffer, Hockaday was aware of the proposed amendment well before the State rested its case, and he had the opportunity to tailor his approach to the amended charges even if the trial court had not yet allowed the State to amend the information. Accordingly, we hold that the Pelkey rule does not apply to the specific facts here.
¶ 23 Where, as here, the Pelkey rule does not apply, the defendant has the burden of demonstrating prejudice under CrR 2.1(d). State v. Hakimi, 124 Wash.App. 15, 26-27, 98 P.3d 809 (2004), review denied, 154 Wash.2d 1004, 113 P.3d 482 (2007). But Hockaday neither claims nor demonstrates that the amendment prejudiced him in any way; instead, he relies solely on the per se prejudicial standard that would apply if the Pelkey rule operated here. Accordingly, we do not address whether the amendment was proper under CrR 2.1(d).[9]
*1278 ¶ 24 We hold that because Hockaday was aware of and agreed to the information's amendment before the close of the State's case, the Pelkey rule does not apply. Because Hockaday does not now assert that the amendment was prejudicial under CrR 2.1(d), we affirm.
We concur: VAN DEREN, A.C.J., and PENOYAR, J.
NOTES
[1] On appeal, Hockaday does not raise any issues concerning the third degree assault charge.
[2] Specifically, the prosecutor stated:

Your Honor, I think we need to put something on the record that the three of us discussed earlier, and probably should have done before the State rested, so I would move to be able to do this now, which would be orally amend the information as to Count 2 to eliminate the reference to Officer Ferris.
I discussed this with counsel earlier. She indicated that it would not be a problem.
RP at 92.
[3] The record on appeal does not show whether the State ever filed the amended information.
[4] The State proposed and the trial court gave the jury a to-convict instruction on the resisting arrest charge, which required the jury to find Hockaday "prevented or attempted to prevent a peace officer from arresting him." CP at 25, 48 (emphasis added). Defense counsel did not object to this instruction. Hockaday does not challenge this instruction on appeal.
[5] Under the invited error doctrine, a defendant may not set up an error at trial and then complain about it on appeal. City of Seattle v. Patu, 147 Wash.2d 717, 720-21, 58 P.3d 273 (2002). The defendant must, however, materially contribute to the error challenged on appeal by engaging in some type of affirmative action through which he knowingly and voluntarily sets up the error. See In re Personal Restraint of Call, 144 Wash.2d 315, 326-28, 28 P.3d 709 (2001); State v. Wakefield, 130 Wash.2d 464, 475, 925 P.2d 183 (1996); In re Dependency of K.R., 128 Wash.2d 129, 147, 904 P.2d 1132 (1995). Although the record shows Hockaday agreed to the amendment before the State rested its case, there is nothing in the record suggesting he caused, encouraged, or contributed to the prosecutor's failure to move to amend the information until after she presented the State's case in chief. Because there is nothing in the record showing that Hockaday materially contributed to the specific error he now alleges, we agree with Hockaday that the doctrine of invited error does not apply.
[6] Although it appears that the amendment lessened the State's burden of proof by allowing it to prove the resisting arrest charge if Hockaday resisted any of the officers rather than one named officer, we leave the question of whether this type of amendment falls under the Pelkey rule for another day.
[7] Formerly CrR 2.1(e) (1986).
[8] Pelkey, 109 Wash.2d at 486, 745 P.2d 854 (State moved to amend after close of its case in chief and after defense counsel moved to dismiss for lack of evidence on an element of the originally charged offense; defense counsel also moved to dismiss "based on the amendment of the information."); see also Vangerpen, 125 Wash.2d at 785, 888 P.2d 1177 (trial court granted State motion to amend information that omitted premeditation element after (1) the State rested its case, (2) the trial court denied a defense counsel motion to dismiss for insufficient evidence of premeditation, (3) defense counsel rested the defenses case without presenting any witnesses, (4) defense counsel moved to dismiss based on the insufficiency of the information, and (5) defense counsel objected to the untimely amendment); Markle, 118 Wash.2d at 427-28, 823 P.2d 1101 (State moved to amend at close of its case over defense objections).
[9] In addition, Hockaday's counsel's agreement to the amendment strongly suggests that the amendment was not prejudicial. See State v. Murbach, 68 Wash.App. 509, 512, 843 P.2d 551 (1993) (absence of request for continuance indicated amendment to information was not prejudicial). We note that Hockaday does not argue that his trial counsel provided ineffective assistance when she agreed to the amendment.