IN THE COURT OF APPEALS OF THE STATE OF WASHINGTON
DIVISION THREE

| | | |
|---|---|---|
| STATE OF WASHINGTON, | ) | No. 35515-2-III |
| | ) | |
| Respondent, | ) | |
| | ) | |
| v. | ) | UNPUBLISHED OPINION |
| | ) | |
| ANDREW THOMAS DEWEY, | ) | |
| | ) | |
| Appellant. | ) | |

LAWRENCE-BERREY, C.J. — A jury found Andrew Dewey guilty of second degree burglary, violation of a protection order, and obstructing a law enforcement officer. Mr. Dewey appeals his convictions for second degree burglary and violation of a protection order. We affirm the first but reverse the second.

FACTS

The State initially charged Mr. Dewey with residential burglary, violation of a protection order, obstructing law enforcement, and possession of a stolen vehicle. The information alleged that Mr. Dewey violated the protection order by contacting his wife, Cyndee Dewey, the protected person.

On the first day of trial, the State filed an amended information charging Mr. Dewey with second degree burglary, second degree theft, second degree possession of stolen property, violation of a protection order, obstructing law enforcement, and possession of a stolen vehicle. The amended information continued to allege that Mr. Dewey violated the protection order by contacting his wife, Cyndee Dewey, the protected person.

The State called Ms. Dewey as its first witness. She testified she and Mr. Dewey had been married for 18 years but were in the process of divorcing. During the divorce, she requested a protection order, and she and Mr. Dewey were present at the hearing. At the hearing, both she and Mr. Dewey discussed their residential property and another property located at 1560 Twin Lakes Road.

Ms. Dewey testified that the Twin Lakes property had an outbuilding with a bathroom inside. She explained there were items of personal property inside the building that belonged to both her and Mr. Dewey. She testified she thought Mr. Dewey sometimes used the outbuilding as a residence. At the hearing for a protection order, Mr. Dewey expressed a desire to obtain some of his personal property at the Twin Lakes property. The judge told Mr. Dewey that he could contact the sheriff's department so a deputy could do a standby to assist him in recovering his personal property.

Ms. Dewey testified that the court issued a protection order that prevented Mr. Dewey from contacting her or going onto either of their properties. Mr. Dewey signed the order. Deputy Dan Kivi later personally served the order on Mr. Dewey.

Ms. Dewey testified that she later received a call from Deputy Kivi about a blue truck loaded with items at the Twin Lakes property. She learned Mr. Dewey was using the truck, and the truck was impounded. She went to the sheriff's office and identified items that were in the blue truck. Ms. Dewey testified she put the items into three categories: (1) items that belonged to Mr. Dewey, (2) items that were community property, and, (3) items that belonged to her. Some of the items that belonged to Ms. Dewey included her son's football, components of her cotton candy machine, which she used as a side business, and pictures of her children from a previous relationship. All of these items had been stored inside the Twin Lakes outbuilding.

Deputy Kivi also testified. Deputy Kivi testified he was doing a security check in the area of the Twin Lakes property and saw a blue pickup truck that was backed up to the door of the outbuilding. Deputy Kivi thought this was suspicious because he knew, from previously serving the protection order, that Mr. Dewey was not supposed to be there. Deputy Kivi testified there were a lot of items stacked in the truck's bed and cab. Deputy Kivi called for backup. He also called Ms. Dewey to confirm that nobody was

3

supposed to be there and nobody had permission to remove belongings. Other deputies arrived and found a way into the building. Nobody was inside. The deputies searched the surrounding area and eventually found Mr. Dewey laying in the brush. They arrested Mr. Dewey and advised him of his constitutional rights. Mr. Dewey stated that the Twin Lakes property was not included in the protection order and that he lived there.

Mr. Dewey then presented his defense. Mr. Dewey testified he was taking all of the items that were in the blue truck back to where he currently was living. He also testified he took the items belonging to Ms. Dewey to exchange them later during a civil standby. On cross-examination, Mr. Dewey acknowledged he sometimes used the Twin Lakes property as a residence and admitted the property is subject to the protection order.

After Mr. Dewey rested, he moved to dismiss the violation of protection order charge. Mr. Dewey argued that the amended information alleged he violated the protection order by contacting Ms. Dewey, and there was no evidence that he contacted her. The State then moved to amend the information to allege that Mr. Dewey violated the protection order by being at the Twin Lakes property. The trial court granted the State's motion to amend.

4

The jury returned a verdict finding Mr. Dewey guilty of second degree burglary, violation of the protection order, and obstructing law enforcement. The jury found Mr. Dewey not guilty of second degree theft, second degree possession of stolen property, and possession of a stolen vehicle.

Mr. Dewey appeals.

## ANALYSIS

A.     LATE AMENDMENT TO THE INFORMATION

Mr. Dewey argues the trial court erred when it allowed the State to amend the information after all the evidence was presented.

Article I, section 22 of the Washington Constitution provides: "In criminal prosecutions the accused shall have the right . . . to demand the nature and cause of the accusation against him." Simply put, "a defendant has the right to be informed of the charges against him and to be tried only for offenses charged." *State v. Peterson*, 133 Wn.2d 885, 889, 948 P.2d 381 (1997). A "midtrial amendment of an information is 'reversible error per se even without a defense showing of prejudice.'" *Id.* (quoting *State v. Markle*, 118 Wn.2d 424, 437, 823 P.2d 1101 (1992)); *accord State v. Pelkey*, 109 Wn.2d 484, 491, 745 P.2d 854 (1987). Although CrR 2.1(d) allows amendment "any time before verdict or finding if substantial rights of the defendant are not prejudiced,"

5

this works within the confines of article I, section 22. *Pelkey*, 109 Wn.2d at 490. "A criminal charge may not be amended after the State has rested its case in chief unless the amendment is to a lesser degree of the same charge or a lesser included offense." *Id.* at 491. "*Anything else* is a violation of the defendant's article I, section 22 right to demand the nature and cause of the accusation against him or her." *Id.* (emphasis added).

The State argues that a technical amendment, including amending to an alternative means of committing a crime, is allowed and is only reversible if the defendant can show prejudice. *See* Resp't's Br. at 13-15. The three authorities cited by the State to support its argument are distinguishable or otherwise not controlling. *State v. Gosser*, 33 Wn. App. 428, 434-35, 656 P.2d 514 (1982) (amendment occurred before State rested); *State v. Allyn*, 40 Wn. App. 27, 35, 696 P.2d 45 (1985) (overruled sub silentio by *Pelkey*); *State v. Schaffer*, 120 Wn.2d 616, 619-20, 845 P.2d 281 (1993) (amendment occurred before State rested its case).

*Pelkey* is clear. Once the State has rested its case, amendment of the charging document is unconstitutional unless it is an amendment to a lesser included offense or a lesser degree of the same charge. *Pelkey*, 109 Wn.2d at 491. In two cases, this court has reversed late amendments to an alternative means of committing the charged crime.

In *State v. Griffith*, 129 Wn. App. 482, 486, 120 P.3d 610 (2005), the defendant was originally charged with knowingly dealing in child pornography. After the defendant rested his case, the State moved the court to amend the information to include an alternative means of committing the offense—possession with intent to deal in child pornography. *Id.* at 490. The court allowed it. *Id.* On appeal, this court reversed the conviction for dealing in child pornography, adhering to *Pelkey*'s bright line rule. *Id.* at 491. After an analysis, this court concluded that possession under RCW 9.68A.050(2) is not a lesser included offense of RCW 9.68A.050(1) because one can commit the dissemination crime (subsection 1) without committing the possession crime (subsection 2). *Id.* Thus, the amendment was not to a lesser included offense or a lesser degree of the same crime.

In *State v. Laramie*, 141 Wn. App. 332, 341, 169 P.3d 859 (2007), the defendant was charged with assault with a deadly weapon in violation of RCW 9A.36.021(1)(a). However, when the court instructed the jury on assault, the court gave an instruction that included an alternative means of committing second degree assault—recklessly inflicting substantial bodily harm. *Id.* The defendant did not object, but the State brought the discrepancy to the court's attention. *Id.* Instead of reinstructing the jury, the court allowed the State to amend the information. *Id.* at 342. On appeal, this court once again

adhered to *Pelkey*'s bright line rule and recognized *Griffith*'s holding that an amendment to an alternative means is not a lesser included offense. *Id.* at 343-44.[1]

Here, the second amended information stated an alternative means of committing violation of a protection order. The original information charged Mr. Dewey with violation of a protection order by contacting the protected person, Cyndee Dewey. Contacting a protected person violates RCW 26.50.110(1)(a)(i). After both sides rested, the State amended the charge to violation of a protection order that excluded Mr. Dewey from a residence. Going onto residential property contrary to a protection order violates RCW 26.50.110(1)(a)(ii).

We conclude the trial court erred by allowing the State to amend the information to assert an alternative means of committing violation of a protection order. The amendment was prohibited by *Pelkey*, and Mr. Dewey is not required to show that the amendment prejudiced him.

---

[1] Courts have also reversed amendments for more minor, technical reasons. *See, e.g.*, *State v. Vangerpen*, 125 Wn.2d 782, 791, 888 P.2d 1177 (1995) (finding an amendment to the information after both sides had rested to include the statutory word "premeditation" was reversible error); *State v. Hull*, 83 Wn. App. 786, 802, 924 P.2d 375 (1996) (finding an amendment to the information after the State had rested its case to include the word "required" was per se reversible error because the omission of the word "required" in the first information resulted in no viable charge at all).

B.     SUFFICIENCY OF THE EVIDENCE

Mr. Dewey argues that a rational jury could not have found him guilty of second degree burglary because the State presented insufficient evidence.

A challenge to the sufficiency of the evidence admits the truth of all of the State's evidence. *State v. Cardenas-Flores*, 189 Wn.2d 243, 265, 401 P.3d 19 (2017). "Evidence is sufficient to support a guilty verdict if any rational trier of fact, viewing the evidence in the light most favorable to the State, could find the elements of the charged crime beyond a reasonable doubt." *Id.* "[A]ll reasonable inferences from the evidence must be drawn in favor of the State and interpreted most strongly against" Mr. Dewey. *State v. Salinas*, 119 Wn.2d 192, 201, 829 P.2d 1068 (1992).

To prove second degree burglary, the State was required to prove beyond a reasonable doubt that Mr. Dewey entered the Twin Lakes outbuilding or remained unlawfully, with the intent to commit a crime against a person or property therein. RCW 9A.52.030(1). Burglary does not require an intent to commit a specific crime; rather, the intent is simply the intent to commit *any* crime against a person or property. *State v. Bergeron*, 105 Wn.2d 1, 4, 711 P.2d 1000 (1985).

Here, the State proved that Mr. Dewey entered the Twin Lakes outbuilding and took items that belonged only to Ms. Dewey. Viewing the facts most favorably to the

No. 35515-2-III
*State v. Dewey*

State, a reasonable trier of fact could find that Mr. Dewey entered the outbuilding with the intent to commit theft, i.e., deprive Ms. Dewey of property that belonged to her.

Mr. Dewey notes that the jury found him not guilty of the crimes of second degree theft and second degree possession of stolen property. The not guilty verdicts on these offenses and the guilty verdict on second degree burglary are inconsistent. But the inconsistency of a jury's verdict does not support the dismissal of a conviction otherwise supported by substantial evidence. *State v. Ng*, 110 Wn.2d 32, 48, 750 P.2d 632 (1988).

Affirmed in part and reversed in part.

A majority of the panel has determined this opinion will not be printed in the Washington Appellate Reports, but it will be filed for public record pursuant to RCW 2.06.040.

Lawrence-Berrey, C.J.

WE CONCUR:

Korsmo, J.                    Fearing, J.

10