FAIRHURST, C.J. (concurring)
¶ 40 CrR 2.1(d) permits amendments to criminal charges "at any time before verdict or finding if substantial rights of the defendant are not prejudiced." We have established a bright line rule that "[a] criminal charge may not be amended after the State has rested its case in chief unless the amendment is to a lesser degree of the same charge or a lesser included offense" because such an amendment creates prejudice per se. State v. Pelkey, 109 Wash.2d 484, 491, 745 P.2d 854 (1987) (emphasis added). I agree with the dissent that maintaining this bright line rule is important in order to give clarity to both judges and litigants. See dissent at 534-35. I also agree that because, in this case, the State moved to amend before resting its case in chief, this rule does not apply.
¶ 41 However, I write separately because I believe that Michael L. Gehrke demonstrated actual prejudice in this case. See lead opinion at 529 n.7. Prejudice under CrR 2.1(d) involves surprise or inability to prepare a defense. See State v. James, 108 Wash.2d 483, 489, 739 P.2d 699 (1987). Prejudice is more likely "when a jury is involved and the amendment occurs late in the State's case." State v. Schaffer, 120 Wash.2d 616, 621, 845 P.2d 281 (1993). In this jury trial, the State added a new charge directly before resting. This charge included a new element-recklessness. Gehrke could not address this element in his voir dire, opening statement, or cross-examination of any of the State's witnesses. See Pelkey, 109 Wash.2d at 490, 745 P.2d 854 (explaining that where all of this has already occurred, "the defendant is highly vulnerable to the possibility that jurors will be confused or prejudiced by a variance from the original information"). A continuance would not have allowed Gehrke to retroactively change his trial strategy in these crucial stages. See lead opinion at 532. The lead opinion convincingly explains why the State's warning at the beginning of trial that it may move to amend at some point was insufficient to cure this prejudice. See id. at 530-32. In this case, the trial court also conceded that a defense to manslaughter may involve "somewhat of a differen[t] strategy" than a defense to second degree felony murder but allowed the amendment because it felt that the defenses were similar enough. I believe this was an abuse of discretion. 3 Verbatim Report of Proceedings at 550. Because Gehrke was unable to effectively prepare a defense to the recklessness element of first degree manslaughter, I would hold that the trial court improperly allowed the State to amend the charges and would dismiss the manslaughter charge with prejudice.
Owens, J.
González, J. (dissenting)
*534 ¶ 42 Resting a case means something. After the State formally rests in a criminal case, it may not offer any more evidence, call any more witnesses, or amend the information without reopening the case with permission of the court for good cause shown. This is a bright line rule. See State v. Schaffer , 120 Wash.2d 616, 621, 845 P.2d 281 (1993) (citing State v. Pelkey, 109 Wash.2d 484, 490-91, 745 P.2d 854 (1987) ). The lead opinion proposes the per se rule of Pelkey applies before the State has rested its case in chief. I respectfully dissent.
¶ 43 We have previously declined to extend the per se rule "to a point earlier in the [trial,]" and we should decline to do so again. See id. at 622, 845 P.2d 281 ; accord State v. Vangerpen, 125 Wash.2d 782, 790, 888 P.2d 1177 (1995) ; see also State v. Hockaday, 144 Wash. App. 918, 926, 184 P.3d 1273 (2008) ("In Schaffer , our Supreme Court strictly limited Pelkey to situations where the State brings the motion to amend the information after resting its case, emphasizing the risk of prejudice").
¶ 44 The State can amend the charges midtrial, but that power is properly limited by constitutional concerns. See CONST . art. I, § 22 ; Pelkey, 109 Wash.2d at 490, 745 P.2d 854 ( CrR 2.1(d)"operates within the confines of article 1, section 22."). As a practical matter, the further into the trial, the harder it is to amend the charges because of the increasing likelihood of prejudice. CrR 2.1(d). Further, "[a] criminal charge may not be amended after the State has rested its case in chief." Pelkey, 109 Wash.2d at 491, 745 P.2d 854. Once the State rests, prejudice is presumed, except in well-established situations. See, e.g., State v. Peterson, 133 Wash.2d 885, 889-90, 948 P.2d 381 (1997) (quoting State v. Ackles, 8 Wash. 462, 464-65, 36 P. 597 (1894) ). All of this is settled law.
¶ 45 The lead opinion attempts to unsettle this law because it believes allowing the State to amend the information after it has called its last witness but before it has rested would be unfair to Michael Gehrke. See lead opinion at 528-29. But the current rule already protects against unfairness. The lead opinion need only apply CrR 2.1(d) to the facts of the case to determine whether it is unfair to the defendant to allow amendment. See Hockaday, 144 Wash. App. at 927, 184 P.3d 1273 ("Where, as here, the Pelkey rule, does not apply, the defendant has the burden of demonstrating prejudice under CrR 2.1 (d)."). If the amendment is unfair-if it prejudices the defendant-it is not allowed. Instead of hewing to this simple approach, the lead opinion attempts to change the rule itself, creating unnecessary confusion.
¶ 46 Some formalities are meaningful, including when the State formally rests in a criminal case. See, e.g., Pelkey, 109 Wash.2d at 491, 745 P.2d 854. When the State has no more witnesses to call, no more evidence to offer, and is, for all purposes, done presenting its case in chief, then the State will rest its case. Then Pelkey applies because "[a] criminal charge may not be amended after the State has rested its case in chief," except under highly limited circumstances. Id. Now, the lead opinion proposes a rule that calls on appellate courts to make a factual finding that the State has "functionally rested its case in chief" in order to apply Pelkey . See lead opinion at 529 (emphasis omitted). The lead opinion states that its proposed rule does not disturb the bright line rule or move it to a point earlier in the trial. See id. at 530. This is simply false.
¶ 47 The lead opinion argues that if the State were "allowed to amend prior to resting but when it has made clear that it has completed its case in chief (as was the case here), the Pelkey rule would be rendered toothless." Lead opinion at 529. Presumably, what it means is that Pelkey would not protect against prejudice. But Pelkey is only a piece of the whole; the constitutional protection against prejudicial amendments and the right to know charges brought against you would remain. See CONST . art. I, § 22 ; CrR 2.1(d). At this point, because the State had not rested, the CrR 2.1(d) standard would apply, and the trial court could still find prejudice against the defendant and deny the amendment. Pelkey would not be rendered toothless, it is simply not yet invoked.
*535 ¶ 48 It appears that the lead opinion's confusion grows largely from the fact that cases have characterized the Pelkey application point as the point when the State "rested its case" but also when the State "completed its case in chief." Under my reading of the cases, it is clear that the State's actual resting point is the desired Pelkey application mark. This is why it is a "bright line" rule. Vangerpen, 125 Wash.2d at 790, 888 P.2d 1177. But as the lead opinion correctly states, Justice Utter stated the holding of Pelkey as "after the State has rested its case in chief" and in other parts of the opinion characterized the same point as "after the State completed presentation of its case in chief." Pelkey, 109 Wash.2d at 491, 487, 745 P.2d 854. This may be because no verbatim report of proceedings was presented to the Pelkey court and it had to make reasonable inferences from the narrative report before it. Id. at 485 n. 1, 745 P.2d 854. Justice Utter simply equated "after the State has rested its case in chief" with "after the State completed presentation of its case in chief." In other words, "completion of the State's case in chief" means it has rested. Through semantic gymnastics, the lead opinion splits the two and attempts to move the application point to a point earlier in the trial. We should not, and since a majority in this case would not, we do not.
¶ 49 Extending the per se rule interferes with a trial judge's courtroom management. Trial courts can no longer rule on the State's amendment when the court entertains "halftime" motions "[f]ollowing the State's final witness but before the State rests." See, e.g., State v. Holtz, No. 43995-6-II, 2014 WL 4088204 (Wash. Ct. App. Aug. 19, 2014) (unpublished), http://www.courts.wa.gov/opinions/pdf/D2%2043995-6-II%20%20Unpublished%20Opinion.pdf; see also State v. Phillips, 98 Wash. App. 936, 940, 991 P.2d 1195 (2000) (quoting State v. Kjorsvik, 117 Wash.2d 93, 103, 812 P.2d 86 (1991) ). Instead, the court will need to entertain the State's motion before the indeterminate moment when the State has "functionally rested its case in chief." Lead opinion at 529 (emphasis omitted).
¶ 50 This court should apply our existing CrR 2.1(d) standard. Under that standard, Gehrke cannot show that he suffered any actual prejudice from the amendment. In other words, it was not an abuse of discretion for the trial judge to allow that amendment. Under the lead opinion's proposed rule, there would be per se prejudice. I disagree. Under the lead opinion's approach, the mandatory joinder rule would attach and it would necessarily follow that the manslaughter charge must be dismissed with prejudice. State v. Dallas, 126 Wash.2d 324, 327-28, 892 P.2d 1082 (1995). This shows the arbitrary and unfortunate consequences of extending the per se rule to an indeterminate point earlier in the trial. The lead opinion can reach the same result if it believes there was prejudice to Gehrke without changing the rule. I respectfully dissent.
Johnson, J.
Yu, J.