FILED
COURT OF APPEALS DIV I
STATE OF WASHINGTON

2017 MAR 27 AM 9:23

# IN THE COURT OF APPEALS OF THE STATE OF WASHINGTON

| | | |
|---|---|---|
| STATE OF WASHINGTON, | ) | NO. 73949-2-I |
| | ) | |
| Respondent, | ) | DIVISION ONE |
| | ) | |
| v. | ) | |
| | ) | UNPUBLISHED OPINION |
| BRIAN THOMAS DECKER, | ) | |
| | ) | |
| Appellant. | ) | FILED: March 27, 2017 |
| | ) | |

LEACH, J. — The State charged Brian Decker with two counts of assault in the third degree after he pepper sprayed two young men in the parking lot of his apartment complex. The jury found Decker not guilty of count I and guilty of count II. It then made a specific finding that Decker had acted in self-defense for count I. Because Decker succeeded in this self-defense claim, the court awarded him reasonable attorney fees.

Decker appeals his conviction and the amount of attorney fees awarded. The State cross appeals the award of fees. Because Decker fails to show any trial court error or violation of his constitutional rights affecting his trial, we affirm Decker's conviction. But because Decker did not show that he actually paid or is legally obligated to pay any fees, the trial court abused its discretion in awarding him attorney fees. Thus, we reverse the trial court's fee award.

## FACTS

### Substantive Facts

On December 20, 2014, Brian Decker, a tenant of an apartment complex, returned home from work and consumed three or four whiskey drinks. Around midnight Decker went to the parking lot to smoke. He had a flashlight and a can of pepper spray in his pockets.

Decker claims he became suspicious when he saw brake lights "go off" at the end of the parking lot where he had parked his car that night. Due to past issues with car prowling and vandalism in the parking lot, Decker had concerns about his own car. So he approached the source of the brake light and shined his flashlight on that vehicle.

The vehicle belonged to Theodore Chandler. He and Camryne O'Brien were sitting in it, sharing a cigarette. O'Brien got out and shouted at Decker, asking what he was doing. Decker walked away without responding. As Decker walked away, a neighbor drove up and parked her car. Decker told her to call the police.

Meanwhile, both Chandler and O'Brien tried to leave the parking lot in their respective vehicles. But Decker stood in the lane that served as the parking lot's only exit. Although Decker claims he was returning to his apartment, he admits that he was blocking the exit.

O'Brien got out of his car and approached Decker, yelling at him. Decker responded by spraying him with pepper spray. O'Brien returned to his car and tried to drive away over a grass hill but got stuck in the mud.

Decker then sprayed Chandler through the window of Chandler's car. Chandler got out of his car, hit Decker in the face, and returned to his car. As he drove away, he crashed into another vehicle.

Both O'Brien and Decker called 911 to report the incident.

The police arrested Decker at the scene.

## Procedural Facts

The State started this case by filing an information that charged Decker with one count of assault in the third degree. The information alleged,

> That the defendant BRIAN THOMAS DECKER in King County, Washington, during a period of time intervening between December 20, 2014 and December 21, 2014, with criminal negligence did cause bodily harm to Camryne Jon Obrien [sic] and Theodore F. Chandler, human beings, by means of a weapon or other instrument or thing likely to produce bodily harm, to-wit: pepper spray.

The State also filed a certification for determination of probable cause, which included a sworn statement by Detective Sergeant Magnan. Based on this statement, the trial court found probable cause to believe that Decker committed the charged crime and ordered the court clerk to issue a summons.

On June 12, 2015, the State amended the information to charge two counts of assault in the third degree, one for O'Brien and one for Chandler. On

-3-

July 13, the day trial was set to begin, the State again amended the information to add the statement that the two charges "are of the same or similar character, and . . . are based on the same conduct or a series of acts connected together or constituting parts of a common scheme or plan."

The jury found Decker not guilty of count I (assaulting O'Brien) and guilty of count II (assaulting Chandler). By special verdict, the jury found that Decker had proved by a preponderance of the evidence that his use of force against O'Brien was lawful. Decker submitted an affidavit and demand for attorney fees, requesting $78,400. The trial court awarded 15 percent of the fees requested.

Decker appeals his conviction and the amount of his attorney fee award. The State cross appeals the award of any fees.

ANALYSIS

Confrontation Clause

We first consider Decker's claim that the trial court violated his confrontation clause rights. We review an alleged violation of the confrontation clause de novo.[1]

Decker claims that the trial court violated his right to confront a witness against him when it found probable cause that he committed the charged crime based on Detective Sergeant Magnan's declaration without giving Decker the

---

[1] State v. Jasper, 174 Wn.2d 96, 108, 271 P.3d 876 (2012).

opportunity to confront the detective at or before trial. The State responds that (1) Decker waived the issue by not raising it to the trial court and (2) the confrontation clause does not apply at pretrial hearings. We agree with the State.

First, Decker waived the confrontation clause issue when he failed to present it to the trial court. The confrontation clause of the Sixth Amendment provides a defendant with the right "to be confronted with the witnesses against him."[2] The admission of testimonial hearsay at trial violates this confrontation right unless the defendant had an earlier opportunity to examine the absent witness.[3] But a defendant must challenge this evidence at or before trial.[4] "[W]hen a defendant's confrontation right is not timely asserted, it is lost."[5]

Decker contends that the State has the burden of calling Magnan and providing Decker with the opportunity to cross-examine the detective.[6] Decker reasons that because the law does not require him to call any witness, his failure to call this witness does not waive his confrontation claim. But the United States

---

[2] U.S. CONST. amend. VI; CONST. art. I, § 22.

[3] Crawford v. Washington, 541 U.S. 36, 54-55, 124 S. Ct. 1354, 158 L. Ed. 2d 177 (2004).

[4] State v. O'Cain, 169 Wn. App. 228, 241, 279 P.3d 926 (2012).

[5] O'Cain, 169 Wn. App. at 240 (discussing Melendez-Diaz v. Massachusetts, 557 U.S. 305, 129 S. Ct. 2527, 174 L. Ed. 2d 314 (2009)).

[6] See 5C KARL B. TEGLAND, WASHINGTON PRACTICE: EVIDENCE LAW AND PRACTICE § 1300.19, at 528 (6th ed. 2016) ("The State cannot avoid its duty [to produce a declarant for cross-examination at trial] by simply telling the defendant to call the declarant as an adverse witness.").

Supreme Court has said "the defendant always has the burden of raising his Confrontation Clause objection."[7] And as this court has noted, "'[a]lways' means always. It means every time. It means without exception. And it means always, every time, without exception, in the trial court."[8] Decker did not raise a confrontation clause issue to the trial court; thus, he waived that right.

Second, Decker's claim fails because the confrontation clause does not apply to the trial court's probable cause decision. We have previously decided that the confrontation clause and Crawford v. Washington[9] apply only to evidence presented at trial.[10] Decker cites no authority supporting his position, so we assume that he has none. And an overwhelming majority of state courts

---

[7] Melendez-Diaz, 557 U.S. at 327.

[8] O'Cain, 169 Wn. App. at 239.

[9] 541 U.S. 36, 124 S. Ct. 1354, 158 L. Ed. 2d 177 (2004).

[10] See State v. Fortun-Cebada, 158 Wn. App. 158, 172-73, 241 P.3d 800 (2010) (noting that "nothing in Crawford suggests that the Supreme Court intended to change its prior decisions allowing the admission of hearsay at pretrial proceedings, such as a suppression hearing. See McCray v. Illinois, 386 U.S. 300, 311-13, 87 S. Ct. 1056, 18 L. Ed. 2d 62 (1967) (no confrontation clause violation where defendant was denied the chance to discover an informant's name at pretrial hearing); see also Pennsylvania v. Ritchie, 480 U.S. 39, 52, 54 n.10, 107 S. Ct. 989, 94 L. Ed. 2d 40 (1987) (plurality opinion) (Noting that to accept a broader interpretation would transform the confrontation clause into a constitutionally compelled rule of discovery and further recognizing the Court "normally has refused to find a Sixth Amendment violation when the asserted interference with cross-examination did not occur at trial."); California v. Green, 399 U.S. 149, 157, 90 S. Ct. 1930, 26 L. Ed. 2d 489 (1970) ("it is this literal right to 'confront' the witness at the time of trial that forms the core of the values furthered by the Confrontation Clause"); Barber v. Page, 390 U.S. 719, 725, 88 S. Ct. 1318, 20 L. Ed. 2d 255 (1968) ("The right to confrontation is basically a trial right.")).

have decided that <u>Crawford</u> does not apply to preliminary hearings.[11] The trial court did not violate Decker's confrontation rights.

Decker waived any confrontation clause claim by not objecting to the trial court. Even if he had objected, he identifies no violation of his right to confrontation. His confrontation clause claim fails.

### Probable Cause Determination

Decker also challenges the trial court's probable cause finding. He claims that the State's probable cause statement establishes self-defense. Thus, he reasons, the probable cause statement itself defeats the State's case against him. We disagree.

First, evidence of self-defense in a probable cause statement does not diminish evidence of probable cause.[12] Division Two dealt with a similar challenge in <u>McBride v. Walla Walla County</u>.[13] There, McBride sued the county for an alleged violation of his civil rights, claiming that the county did not have probable cause to arrest him "because the uncontroverted facts, known to the officer, established self-defense."[14] The court rejected McBride's claim,

---

[11] <u>Fortun-Cebada</u>, 158 Wn. App. at 173 (observing that "[t]he overwhelming majority of state courts that have addressed the question of whether <u>Crawford</u> applies to a preliminary hearing such as a motion to suppress have also held that the right of confrontation is not implicated").

[12] <u>McBride v. Walla Walla County</u>, 95 Wn. App. 33, 40, 975 P.2d 1029 (1999).

[13] 95 Wn. App. 33, 40, 975 P.2d 1029 (1999).

[14] <u>McBride</u>, 95 Wn. App. at 35-36, 40.

No. 73949-2-I / 8

observing that the arresting officer does not decide whether a defendant has acted in self-defense: "Self-defense is an affirmative defense which can be asserted to render an otherwise unlawful act lawful. But the arresting officer does not make this determination. The officer is not judge or jury; he does not decide if the legal standard for self-defense is met."[15] Like in McBride, when the court made its probable cause determination, Decker's claim of self-defense "was then a mere assertion, not fact."[16]

Further, Decker's claim fails because the probable cause statement alone does not describe sufficient facts to support a self-defense claim. A prima facie showing of self-defense requires evidence of a confrontation, not instigated by the defendant, which would induce a reasonable person to believe he was in imminent danger of great bodily harm.[17] This requires the defendant to show that he had a reasonable apprehension of great bodily harm.[18] Here, the probable cause statement says O'Brien "confronted" Decker but includes no information about Decker's state of mind when the confrontation took place. Moreover, while the probable cause certification states that O'Brien "confronted" Decker, it contains no statement about Chandler confronting Decker. The jury convicted

---

[15] McBride, 95 Wn. App. at 40.
[16] McBride, 95 Wn. App. at 40.
[17] State v. Walker, 40 Wn. App. 658, 662, 700 P.2d 1168 (1985).
[18] State v. Walker, 136 Wn.2d 767, 772, 966 P.2d 883 (1998).

-8-

Decker of assaulting only Chandler. The probable cause statement provides insufficient facts to support a self-defense claim for either count.

For these reasons, Decker's challenge to the trial court's probable cause decision fails.

### Amended Information

We next consider Decker's challenge to the trial court's decisions that permitted the State to amend the information on the first day of trial and denied his request for a continuance. We review each of these decisions for abuse of discretion.[19]

The trial court may permit the State to amend the information any time before verdict or finding if the substantial rights of the defendant are not prejudiced or the amendment is one of mere form, not substance.[20] "The defendant has the burden of showing specific prejudice to a substantial right."[21] A defendant might be prejudiced if the amendment leaves him without adequate time to prepare a defense to the charge.[22] In State v. Purdom,[23] for example, the

---

[19] State v. Purdom, 106 Wn.2d 745, 748, 725 P.2d 622 (1986) ("The decision on a motion for a continuance rests within the sound discretion of the trial court."); State v. Schaffer, 120 Wn.2d 616, 621-22, 845 P.2d 281 (1993) (reviewing the trial court's decision on a motion to amend the information for abuse of discretion).

[20] CrR 2.1(d); State v. Allyn, 40 Wn. App. 27, 35, 696 P.2d 45 (1985).

[21] State v. Thompson, 60 Wn. App. 662, 666, 806 P.2d 1251 (1991).

[22] Purdom, 106 Wn.2d at 749.

[23] 106 Wn.2d 745, 746, 725 P.2d 622 (1986).

State originally charged the defendant with conspiracy to deliver a controlled substance. But on the first day of trial, the State amended the information, replacing the conspiracy charge with an accomplice charge.[24] Our Supreme Court concluded that the trial court should have granted the defense's request for a continuance to prepare to defend against this new charge.[25]

By contrast, in cases where the amendment was not material, courts have properly allowed the State to amend the information while denying the defense's continuance request.[26] For example, in State v. Schaffer,[27] the court correctly permitted a midtrial amendment that added an additional theory of criminal liability when the defendant was aware that the State might pursue that theory before the amendment, the theory arose from the same general factual circumstance, and the defendant had the opportunity to cross-examine the key witness with full knowledge of the proposed amendment.

Here, like in Schaffer, the State's amendment is not material and did not prejudice Decker. The State sought merely to add joinder language so that the two counts could be tried together. It did not add additional charges or even

---

[24] Purdom, 106 Wn.2d at 746.
[25] Purdom, 106 Wn.2d at 749.
[26] See Schaffer, 120 Wn.2d 621-22; Allyn, 40 Wn. App. at 35.
[27] 120 Wn.2d 616, 622, 845 P.2d 281 (1993).

additional facts. So Decker has not shown that he was "'misled or surprised'" by this amendment.[28]

Because Decker does not show prejudice to any substantial right, the trial court did not abuse its discretion in permitting the amendment and denying the continuance.

## Defense of Property Jury Instruction

Next, we consider Decker's challenge to the trial court's refusal to give his proposed jury instruction on defense of property based on insufficient evidence to support the defense. When a trial court refuses to give a jury instruction based on lack of evidence supporting an affirmative defense, this court reviews that decision de novo.[29]

A defendant is entitled to a jury instruction on his theory of the case if some evidence supports each element of that theory.[30] Therefore, to have the jury instructed on defense of property, some evidence must support the conclusion that Decker used force in an attempt to prevent malicious trespass or malicious interference with real or personal property lawfully in his possession.[31] Here, the evidence is insufficient to show defense of property.

---

[28] Schaffer, 120 Wn.2d at 622 (quoting State v. Mahmood, 45 Wn. App. 200, 205, 724 P.2d 1021 (1986)).
[29] State v. Fisher, 185 Wn.2d 836, 849, 374 P.3d 1185 (2016).
[30] Fisher, 185 Wn.2d at 848-49.
[31] RCW 9A.16.020(3).

First, no evidence shows "malicious trespass." "Malice" is "an evil intent, wish, or design to vex, annoy, or injure another person."[32] Nothing suggests that Chandler and O'Brien had a malicious intent or were doing anything but minding their own business. Further, no evidence shows that Chandler and O'Brien did not have the right to be in the parking lot.[33]

Second, no evidence shows that Decker used force to protect his property. Although Decker claims he initially approached Chandler and O'Brien out of concern for his car, by the time he used the pepper spray, he was walking away and claims to have pepper-sprayed O'Brien in response to being threatened.

Because the record includes no evidence of malicious trespass or that Decker acted in defense of property lawfully in his possession, insufficient evidence supports these elements of his defense of property theory. The trial court correctly declined to give a jury instruction on defense of property.

## Discovery Violations

Next, Decker claims that the State committed discovery violations. Discovery decisions are within the sound discretion of the trial court.[34] Appellate

---

[32] RCW 9A.04.110(12).
[33] State v. Rose, 128 Wn.2d 388, 393, 909 P.2d 280 (1996) (observing that access routes are impliedly open to the public).
[34] State v. Hutchinson, 135 Wn.2d 863, 882, 959 P.2d 1061 (1998).

courts will not disturb a trial court's discovery decision absent manifest abuse of that discretion.[35]

First, Decker claims that the State's failure to turn over evidence in response to Decker's discovery requests forced him to waive his speedy trial rights.

> [I]f the State inexcusably fails to act with due diligence, and material facts are thereby not disclosed to defendant until shortly before a crucial stage in the litigation process, it is possible either a defendant's right to a speedy trial, or his right to be represented by counsel who has had sufficient opportunity to adequately prepare a material part of his defense, may be impermissibly prejudiced.[36]

But the defendant "must prove by a preponderance of the evidence that interjection of new facts into the case when the State has not acted with due diligence will compel him to choose between prejudicing either of these rights."[37] Decker's briefing does not identify what evidence the State failed to turn over or how the State did not act with due diligence. Because Decker did not adequately brief this challenge, we decline to consider it.

Decker also claims the State failed to provide information about statements that witnesses made to the prosecution. Decker asked the trial court to exclude the testimony of witnesses with whom the State had contact, but the court refused. CrR 4.7 requires the prosecution to disclose "any written or

---

[35] State v. Blackwell, 120 Wn.2d 822, 826, 845 P.2d 1017 (1993).
[36] State v. Price, 94 Wn.2d 810, 814, 620 P.2d 994 (1980).
[37] Price, 94 Wn.2d at 814.

recorded statements and the substance of any oral statements" of witnesses the prosecuting attorney intends to call.[38] The prosecutor admitted that she spoke with the witnesses in the case before trial, but she said that those conversations were about scheduling and she did not talk with any witness about the facts of the case. Decker's counsel asked several witnesses about their contact with the prosecutor but did not establish that they discussed anything of substance. Because Decker does not show that the State failed to turn over any substantive statements by witnesses, we find no error.

We also find no merit in Decker's claims about witness coaching. Citing to the witness tampering statute,[39] Decker contends that the trial court should have dismissed the charges against him because the State coached witnesses. Specifically, he objects to the State telling O'Brien "not to bring up his prior criminal history no matter what." However, the prosecutor's direction was consistent with the trial court's evidentiary rulings. Pretrial, the court had granted the State's motion to exclude evidence of O'Brien's criminal history. "It is the duty of every trial advocate to prepare witnesses for trial."[40] We find that it was not improper for the prosecutor to direct O'Brien to avoid inadmissible testimony.

---

[38] CrR 4.7(a)(1)(ii).
[39] RCW 9A.72.120.
[40] State v. Montgomery, 163 Wn.2d 577, 592, 183 P.3d 267 (2008).

-14-

## Statement of Additional Grounds for Review

Decker raises several pro se arguments.

First, Decker has not provided a sufficient record to permit review of his claims about the admissibility of 911 calls or O'Brien's deposition testimony because the record does not contain transcripts of the calls and testimony.[41] Similarly, we cannot review Decker's claim that the State committed a Brady violation[42] by failing to turn over Corporal Kramp's police report sooner. To establish a Brady violation, the defendant must show (1) the evidence is favorable to him or her because it is either exculpatory or impeaching, (2) the evidence was willfully or inadvertently suppressed by the State, and (3) the evidence is material.[43] Because the report is not part of the record, we cannot decide whether the report was material or exculpatory.

Because the court does not have an adequate record to review these issues, we do not consider them.[44] Decker's remaining pro se arguments have no merit.

---

[41] The transcripts of the 911 calls were attached to Decker's statement of additional grounds for review but are not included in the clerk's papers. "Only documents that are contained in the record on review should be attached or referred to in the statement." RAP 10.10(c).

[42] Brady v. Maryland, 373 U.S. 83, 83 S. Ct. 1194, 10 L. Ed. 2d 215 (1963).

[43] State v. Davila, 184 Wn.2d 55, 69, 357 P.3d 636 (2015).

[44] Decker also asserts a claim about the propriety of the deputy prosecuting attorney's presence at his citizen's complaint hearing. The basis of

No. 73949-2-I / 16

*CrR 3.5 Hearing*

Decker challenges the court's finding after a CrR 3.5 hearing that he was not in custody when he made certain statements to the police and its decision to admit those statements as evidence at trial. This court reviews challenged findings of fact entered after a CrR 3.5 hearing for substantial evidence and reviews de novo whether the trial court's conclusions of law are supported by its findings of fact.[45] Appellate courts treat "unchallenged findings of fact and findings of fact supported by substantial evidence as verities on appeal."[46]

When an officer briefly detains a suspect during an investigatory stop, the suspect is not in custody for purposes of Miranda warnings.[47] Courts consider three factors to determine whether an intrusion is permissible: "(1) the purpose of the stop; (2) the amount of physical intrusion upon the suspect's liberty; and (3) the length of time the suspect is detained."[48] Applying these factors, substantial evidence supports the trial court finding that Decker was not in custody.

---

this claim is unclear, and the record contains no evidence about this hearing. Whatever Decker's claim is, it is unreviewable.

[45] State v. Rosas-Miranda, 176 Wn. App. 773, 779, 309 P.3d 728 (2013).
[46] State v. Homan, 181 Wn.2d 102, 106, 330 P.3d 182 (2014).
[47] Miranda v. Arizona, 384 U.S. 436, 86 S. Ct. 1602, 16 L. Ed. 2d 694 (1966); State v. Marcum, 149 Wn. App. 894, 909-10, 205 P.3d 969 (2009).
[48] State v. Wheeler, 108 Wn.2d 230, 235, 737 P.2d 1005 (1987).

-16-

First, the purpose of the stop justified the intrusion in this case. "The purpose of a stop must be related to an investigation focused on the defendant."[49] Here, the police believed that a crime had been committed and that the crime involved pepper spray. Thus, the investigatory stop had two purposes: to identify the suspect and to ensure officer safety.

Second, the degree of intrusion was not disproportionate under the circumstances. "[T]he degree of intrusion must also be appropriate to the type of crime under investigation and to the probable dangerousness of the suspect."[50] In State v. Wheeler,[51] for example, officers handcuffed a suspect and placed him in a patrol car to drive him two blocks back to the crime scene for a witness identification. Although the intrusion in Wheeler was "'significant,'" it was not excessive.[52] Similarly here, although Decker was handcuffed, the intrusion was an appropriate action to take when investigating an assault.

Finally, at 10 to 15 minutes, the length of the intrusion was brief.[53]

Substantial evidence supports the trial court's conclusion that Decker was not in custody.

---

[49] Wheeler, 108 Wn.2d at 235.
[50] Wheeler, 108 Wn.2d at 235.
[51] 108 Wn.2d 230, 233, 737 P.2d 1005 (1987).
[52] Wheeler, 108 Wn.2d at 235.
[53] The trial court's findings of fact do not contain information about the length of the stop, but it made a finding that "Corporal Herzog, Corporal Kramp, and Officer Derr are credible," and Corporal Kramp estimated that the length of the investigatory stop was 10 to 15 minutes.

*Exclusion of Impeachment Evidence*

Decker also appeals the trial court's decision to exclude an edited video of his arrest. The trial court has broad discretion in deciding whether to admit or exclude evidence.[54] In addition, "the trial court . . . has discretion to control the scope of cross-examination and may reject lines of questions that only remotely tend to show bias or prejudice."[55]

Decker sought to introduce an edited video to impeach Corporal Herzog. Decker claims that the video contradicts Corporal Herzog's testimony at the CrR 3.5 hearing that he had read Decker his <u>Miranda</u> rights. Decker's counsel indicated an intention to examine Corporal Herzog about the statements made at the 3.5 hearing and then introduce the video as impeachment evidence. The court decided not to allow cross-examination about what happened at a CrR 3.5 hearing or impeachment of the CrR 3.5 hearing testimony. Decker does not show that these decisions were wrong.

ER 607 permits any party to attack the credibility of a witness. But a witness cannot be impeached on matters collateral to the principal issues being tried.[56] A "matter is collateral if the evidence is inadmissible for any purpose independent of the contradiction."[57] The question of whether Corporal Herzog

---

[54] <u>State v. Lubers</u>, 81 Wn. App. 614, 623, 915 P.2d 1157 (1996).
[55] <u>State v. Kilgore</u>, 107 Wn. App. 160, 185, 26 P.3d 308 (2001).
[56] <u>State v. Dickenson</u>, 48 Wn. App. 457, 468, 740 P.2d 312 (1987).
[57] <u>Dickenson</u>, 48 Wn. App. at 468.

-18-

read Decker his <u>Miranda</u> rights is collateral to the central issues because (a) it is not a question for the jury and (b) Decker's counsel admitted that he was not bringing it up to question <u>Miranda</u>.[58] The trial court did not abuse its discretion in excluding the edited video or preventing Decker from attacking Corporal Herzog's credibility this way.

## Attorney Fees

Finally, we consider whether the trial court abused its discretion when it decided to award 15 percent of the attorney fees Decker requested under RCW 9A.16.110. This court reviews an interpretation of RCW 9A.16.110 de novo but reviews a determination of the amount of an award for abuse of discretion.[59] A trial court abuses its discretion when it makes a manifestly unreasonable decision or bases its decision on untenable grounds or reasons.[60] A court bases its decision on untenable grounds or reasons when it applies the wrong legal standard or relies on unsupported facts.[61]

---

[58] The trial court must make a preliminary determination of the admissibility of a confession or statement. <u>State v. Rice</u>, 24 Wn. App. 562, 565, 603 P.2d 835 (1979).

[59] <u>State v. Villanueva</u>, 177 Wn. App. 251, 254 & n.1, 311 P.3d 79 (2013); <u>McGreevy v. Or. Mut. Ins. Co.</u>, 90 Wn. App. 283, 289, 951 P.2d 798 (1998), <u>overruled on other grounds by Panorama Vill. Condo. Owners Ass'n Bd. of Dirs. v. Allstate Ins. Co.</u>, 144 Wn.2d 130, 26 P.3d 910 (2001).

[60] <u>State v. Cayetano-Jaimes</u>, 190 Wn. App. 286, 295, 359 P.3d 919 (2015).

[61] <u>Cayetano-Jaimes</u>, 190 Wn. App. at 295.

Decker seeks to recover fees for the entire trial. The State claims that the trial court erred in awarding any fees. We agree with the State.

RCW 9A.16.110 permits a criminal defendant to recover attorney fees from the State when the jury finds by a preponderance of the evidence that the defendant acted in self-defense:

> When a person charged with [assault] is found not guilty by reason of self-defense, the state of Washington shall reimburse the defendant for all reasonable costs, including loss of time, legal fees incurred, and other expenses involved in his or her defense. . . . To award these reasonable costs the trier of fact must find that the defendant's claim of self-defense was sustained by a preponderance of the evidence. If the trier of fact makes a determination of self-defense, the judge shall determine the amount of the award.[62]

A defendant has the burden of proving the facts necessary to support a statutory reimbursement claim.[63] First, he must prove two events: (1) that a jury acquitted and (2) that the same jury found by a preponderance of the evidence that he acted in self-defense.[64] The defendant must then show that he incurred fees to establish self-defense.[65]

Here, Decker's demand for attorney fees presented a lodestar calculation[66] to show a reasonable amount of fees for litigating the entire case.

---

[62] RCW 9A.16.110(2).
[63] State v. Anderson, 72 Wn. App. 253, 260, 863 P.2d 1370 (1993).
[64] State v. Jones, 92 Wn. App. 555, 561, 964 P.2d 398 (1998).
[65] Anderson, 72 Wn. App. at 260.
[66] Mahler v. Szucs, 135 Wn.2d 398, 433-34, 957 P.2d 632 (1998).

Decker does not challenge the trial court finding that he presented no evidence of legal fees he had paid or legal fees he owes but has not paid. The trial court decided that Decker was entitled only to fees incurred in his defense of count I, the charge for which he was acquitted. Because Decker did not provide any information about the actual fees he incurred, the court said it "must attempt to ascertain a reasonable award from the information provided." It awarded 15 percent of the total requested.

First, the trial court erred in concluding that its duty was to "ascertain a reasonable award." In State v. Anderson,[67] Division Two held that "RCW 9A.16.110 is an indemnification-reimbursement statute" and not a reasonable attorney fee statute. In other words, the State must reimburse Decker for legal fees that he has already paid and indemnify him for fees that he has become legally obligated to pay in the future "pursuant to an enforceable contract,"[68] subject to the limitation that amount is reasonable. A trial court may award reasonable fees only after the defendant has shown that he actually paid fees or is legally obligated to pay fees. Decker admits that he did not meet this burden.[69]

---

[67] 72 Wn. App. 253, 263, 863 P.2d 1370 (1993).

[68] Anderson, 72 Wn. App. at 263-64.

[69] Contra Jones, 92 Wn. App. at 559-60 (where the defendant provided the court with bills he had received from law firms who defended him and one attorney submitted an affidavit stating that Jones had paid him $1,000); Anderson, 72 Wn. App. at 257 (where the trial court had entered findings of fact

The trial court abused its discretion in awarding fees that Decker had not shown that he paid or was legally obligated to pay. We reverse the trial court's award. As a result, we need not consider the reasonableness of the fee amount awarded.

## CONCLUSION

We affirm in part and reverse in part. Because Decker's arguments fail, we affirm his conviction. But because Decker did not show that he actually paid any legal fees or is legally obligated to pay his privately retained counsel any fees, the trial court abused its discretion in awarding statutory fees. Accordingly, we reverse the trial court's award of fees.

_Leach, J._

WE CONCUR:

_Mann, J._

_Cox, J._

---

that one of the two appellants had been billed by his defense attorneys and had partially paid that bill).