## IN THE COURT OF APPEALS OF THE STATE OF WASHINGTON

## DIVISION II

| | |
|---|---|
| STATE OF WASHINGTON, | No. 50794-3-II |
| Respondent, | |
| v. | |
| MICHAEL J. DOTSON, | UNPUBLISHED OPINION |
| Appellant. | |

LEE, A.C.J. — Michael J. Dotson appeals his conviction for felony violation of a no contact order. Dotson argues that the trial court erred by allowing the State to amend its information mid-trial. Dotson also argues that he received ineffective assistance of counsel. We affirm.

## FACTS

The State charged Dotson with Felony Violation of a No Contact Order (VNCO). CP 60; PDF 62. The information specifically alleged that "on or about May 26, 2017, with knowledge that the Grays Harbor Superior Court had previously issued a no contact order. . .in State of Washington v. Michael James Dotson, Cause No. 15-1-381-2 did violate the order while the order was in effect. . . ." Clerk's Papers (CP) at 60; PDF 62.

Prior to trial, the State offered four certified judgment and sentences showing Dotson's prior VNCOs against the same victim. VRP 13-14. Dotson objected, arguing that because the State was only required to prove two prior VNCOs, introducing proof of four prior VNCOs was

unduly prejudicial.  VRP 13-14.  The trial court agreed and ruled that the State would be limited to introducing evidence of two prior VNCOs.  VRP 17.  However, if Dotson challenged the validity of either prior VNCO, the State would be permitted to offer evidence of the additional prior VNCOs in rebuttal.  VRP 17.

Sergeant Steve Timmons of the City of Aberdeen Police Department testified at Dotson's jury trial.  VRP 89.  Timmons testified that, on May 26, 2017, he was eating at a restaurant before starting his shift.  VRP 91.  While at the restaurant, Timmons saw Dotson with Leona Starr and Clifford Hudson.  VRP 92.  Timmons testified that he was familiar with all three individuals because of previous contacts he had with them.  VRP 92-93.  Timmons was aware that Dotson had a no contact order prohibiting contact with Starr.  VRP 94.  Timmons confirmed the no contact order with Sergeant Ross Lampky.  VRP 94.  Later, after he began his shift, Timmons arrested Dotson for violation of the no contact order.  VRP 96.  Timmons testified that he pulled a copy of a pretrial no contact order and attached it to his police report.  VRP 117; Ex. 9.

Lampky also testified at trial.  VRP 103.  Lampky testified that Timmons called him and asked him to verify a no contact order between Dotson and Starr.  VRP 105.  Lampky called the records department and verified there was a no contact order that had been served.  VRP 105.  Lampky testified that he did not know what specific no contact order was confirmed by the records department or if there were multiple orders in effect at the time.  VRP 112.

The trial court then released the jury for lunch.  VRP 119.  Before the trial court recessed for lunch, the State informed the court that, after lunch it would introduce the certified judgment and sentences for the prior VNCOs and then "that should be it."  Verbatim Report of Proceeding

No. 50794-3-II

(VRP) at 120. However, after lunch, the State asked to amend its information. VRP 124. The State explained,

> Well, as you heard at the end of testimony, the no-contact order which has been admitted as Exhibit 3, is a pretrial no-contact order. The defendant was convicted prior to this date and a postconviction replacement order was not put in place. So I had a conversation over lunch about whether the conviction nullifies the pretrial order. And it's the consensus in our office that as a matter of law, that would basically nullify the order we've been talking about as Exhibit 3.
>
> Now, Mr. Dotson had two active orders at that time. He had an order which has been premarked as Exhibit 8, but not admitted in Cause Number 13-1-75-2. That is a postconviction no-contact order, same parties are protected, same restraint provisions, and it does not expire until 2018. So as embarrassing as it is that our office didn't catch it until now, I just – the – the amended information simply changes the cause number of the no-contact order that was violated.

VRP at 124-25. The State proposed an amended information alleging that Dotson violated a no contact order issued in Cause No. 13-1-75-2. CP 43; PDF 45.

Dotson objected to the amendment and asserted that he would be prejudiced by the amendment. VRP 127. The trial court asked Dotson to explain exactly how he was prejudiced. VRP 128. Dotson's attorney stated,

> So by not amending to it, we proceeded in a certain way. Whereas, if they would have amended it two weeks ago or earlier, I know that I would have looked at the case in a different way and advised my client accordingly.
> . . . .
> He still may have wanted to go to trial, but I would have certainly had different things to say to him and I would have certainly prepared differently based on that no-contact order versus the one that I had. Because I did not have that one, it's not in my –
> . . . .
> Yes. So maybe I misspoke about not having that until recently. I keep seeing pretrial. But I also looked a little further and that was the – but still, had they plead it properly, I would have changed my strategy on how to attack the validity of the no-contact order.
> . . . .

3

I mean I proceeded on this case as this is a preconviction. This no-contact order is preconviction, so I set my case up on that to question the officers about is this the one that you verified? Is this the one that you base your decision to arrest on. And the answer was yes. Had they plead the different one saying postconviction, I probably wouldn't even – those questions wouldn't' even have been – I mean they would have been relevant, but I probably wouldn't have asked them.

VRP at 125-31.

The trial court stated that it was "struggling to see any prejudice by allowing the information to be amended, because it is allowable to amend the information right up to the time that the State rests." VRP at 132. The trial court allowed the State to amend the information. VRP 133.

The jury found Dotson guilty of felony VNCO. CP 34; PDF 36. Dotson's offender score was calculated at 10. CP 3; PDF 5. The trial court imposed a standard range sentence of 60 months confinement. CP 4; PDF 6.

Dotson appeals.

ANALYSIS

A.    AMENDMENT OF INFORMATION

Dotson argues that the trial court erred by allowing the State to amend its information. Br. of App. at 10-13. We disagree.

We review a trial court's ruling on a motion to amend a complaint for an abuse of discretion. *State v. Schaffer*, 120 Wn.2d 616, 621-22, 845 P.2d 281 (1993). A trial court abuses its discretion if its decision is manifestly unreasonable or is based on untenable grounds or for untenable reasons. *State v. Lord*, 161 Wn.2d 276, 283-84, 165 P.3d 1251 (2007).

CrR 2.1(d) allows the State to amend an information at any time before the verdict as long as the "substantial rights of the defendant are not prejudiced."[1] While the rule permits liberal amendment, it operates within the boundaries of article 1, section 22 of the Washington Constitution, which requires that the accused be adequately informed of the charge to be met at trial. *State v. Schaffer*, 120 Wn.2d 616, 622-23, 845 P.2d 281 (1993).

---

[1] Recently, our Supreme Court decided *State v. Gehrke*, ___ Wn.2d ___, 434 P.3d 522, 526 (2019). The main issue in *Gehrke* was whether to expand the *Pelkey* rule, which prohibits the State from amending an information after it rests unless the amendment is to a lesser included or lesser degree offense. *Gehrke* is a plurality opinion. Four justices signed the opinion applying the *Pelkey* rule to a situation when the State had functionally completed presentation of its case but before it formally rested. *Gehrke*, 434 P.3d at 529. Three justices dissented, stating that the *Pelkey* rule does not apply until the State formally rests. *Gehrke*, 434 P.3d at 534-35. Two justices concurred in the result reached by the four justices because the defendant demonstrated prejudice resulting from the amendment, as required under CrR 2.1(d). *Gehrke*, 434 P.3d ay 533. But the concurring justices disagreed with the plurality opinion in applying the *Pelkey* rule and expressly agreed with the dissent that the *Pelkey* rule does not apply until the State formally rests. *Gehrke*, 434 P.3d ay 533. Therefore, a majority of justices agreed that the *Pelkey* rule does not apply until the State has formally rested its case.

A plurality opinion "has limited precedential value and is not binding on the courts." *In re Pers. Restraint of Isadore*, 151 Wn.2d 294, 302, 88 P.3d 390 (2004). Therefore, we decline to follow the rule articulated by the plurality—that *Pelkey* applies when the State functionally completes the presentation of its case—and continue to apply CrR 2.1(d)'s substantial prejudice rule if the amendment is made prior to the State resting its case in chief. *See State v. Schaffer*, 120 Wn.2d 616, 619-22, 845 P.2d 281 (1993) (declining to apply *Pelkey* to amendments during the State's case and holding that CrR 2.1(d) is the appropriate rule to apply to amendments made during the State's case).

Moreover, here, although the State told the trial court that it had completed presenting evidence, after trial court allowed the amendment, the State actually briefly recalled Sergeant Timmons and presented additional testimony. VRP 135-36. Therefore, even under the "functionally completed" standard set by the plurality opinion in *Gehrke*, the *Pelkey* rule likely would not apply because the State presented additional evidence after the amendment.

The defendant bears the burden of establishing prejudice resulting from an amendment to the information. *See State v. Mahmood*, 45 Wn. App. 200, 205, 724 P.2d 1021 (1986) (holding in the absence of showing the defendant was misled or surprised, the defendant cannot meet his burden to show prejudice). A defendant can meet the burden by showing unfair surprise or inability to prepare a defense. *State v. James*, 108 Wn.2d 483, 489, 739 P.2d 699 (1987).

Here, Dotson's attorney argued the amendment was prejudicial because he would have advised his client differently and he would have taken a different approach to questioning the officers. However, Dotson's attorney's general statements to the trial court do not identify any prejudice or substantial right that was prejudiced by the amendment. And the record shows that the State provided Dotson with a copy of the post-conviction NCO in discovery prior to trial. VRP 129-30. Also, the State did not call any different witnesses based on the amendment. Because Dotson had a copy of the valid post-conviction NCO and the State did not add or change witnesses, Dotson fails to show unfair surprise or an inability to present a defense. *See State v. James*, 108 Wn.2d 483, 489, 739 P.2d 699 (1987) (holding defendant can show prejudice to substantial rights by showing unfair surprise or an inability to prepare a defense); *Mahmood*, 45 Wn. App. at 205.

The trial court did not abuse its discretion by allowing the State to amend the information. Accordingly, we affirm Dotson's conviction.

B.    INEFFECTIVE ASSISTANCE OF COUNSEL

Dotson also argues that he received ineffective assistance of counsel because his counsel failed to object to evidence of his prior convictions and failed to stipulate to the fact of the prior convictions. Br. of App. at 14-16. We disagree.

The Sixth Amendment to the U.S. Constitution and article I, section 22 of the Washington Constitution guarantee a defendant the right to effective assistance of counsel. *State v. Grier*, 171 Wn.2d 17, 32, 346 P.3d 1260 (2011), *cert. denied*, 135 S. Ct. 153 (2014). An ineffective assistance of counsel claim is a mixed question of fact and law that we review de novo. *State v. Sutherby*, 165 Wn.2d 870, 883, 204 P.3d 916 (2009). To prevail on an ineffective assistance of counsel claim, the defendant must show that (1) counsel's performance was deficient and (2) counsel's deficient performance prejudiced the defense. *Grier*, 171 Wn.2d at 32-33 (citing *Strickland v. Washington*, 466 U.S. 668, 104 S. Ct. 2052, 80 L. Ed. 2d 674 (1984)). If the defendant fails to satisfy either prong, the defendant's ineffective assistance of counsel claim fails. *Grier*, 171 Wn.2d at 33.

Counsel's performance is deficient if it falls below an objective standard of reasonableness. *Grier*, 171 Wn.2d at 33. We engage in a strong presumption that counsel's performance was reasonable. *State v. Kyllo*, 166 Wn.2d 856, 862, 215 P.3d 177 (2009). A defendant may overcome this presumption by showing that " 'there is no conceivable legitimate tactic explaining counsel's performance.' " *Grier*, 171 Wn.2d at 33. Recently, our Supreme Court held that the record must be sufficient for us to determine what counsel's reasons for the decision were in order to evaluate whether counsel's reasons were legitimate. *State v. Linville*, 191 Wn.2d 513, 525-26, 423 P.3d 842 (2018). If counsel's reasons for the challenged action are outside the record on appeal, the defendant must bring a separate collateral challenge. *Linville*, 191 Wn.2d at 525-26.

Here, defense counsel did object to the admission of four of Dotson's prior convictions because the State only needed to prove he had two prior convictions. However, the reasons why counsel decided to have the State prove the existence of the prior convictions rather than stipulating

to the existence of prior convictions is not in the record before us. Therefore, this court cannot determine whether counsel's performance was deficient for failing to stipulate to the existence of Dotson's prior convictions. *See Linville*, 191 Wn.2d at 525-26. Accordingly, Dotson must bring a collateral challenge. *Linville*, 191 Wn.2d at 525-26; *State v. McFarland*, 127 Wn.2d 322, 338, 899 P.2d 1251 (1995

We affirm.

A majority of the panel having determined that this opinion will not be printed in the Washington Appellate Reports, but will be filed for public record in accordance with RCW 2.06.040, it is so ordered.

                                                 , A.C.J.

Lee, A.C.J.

We concur:

Worswick, J.

Cruser, J.